1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LANDMARK LEGAL FOUNDATION   :    CA No. 00-2338
                                :
               Plaintiff,     :
                                :
       v.                    :    Washington, D.C.
                                :    Friday, January 19, 2001
ENVIRONMENTAL PROTECTION   :    9:47 a.m.
  AGENCY,                 :
                                :
             Defendant.    :
- - - - - - - - - - - - - - - - -x

FILED

MAR 2 6 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

TRANSCRIPT OF TEMPORARY RESTRAINING ORDER
AND/OR PRELIMINARY INJUNCTION HEARING
BEFORE THE HONORABLE ROYCE C. LAMBERTH
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          RICHARD PETER HUTCHINSON, ESQUIRE
                              LANDMARK LEGAL FOUNDATION
                              3100 Broadway
                              Suite 1110
                              Kansas City, Missouri  64111
                              (816)  931-5559
                              (Appearance via telephone)

For The Defendant:         MICHAEL A. HUMPHREYS, ESQUIRE
                              UNITED STATES DEPARTMENT OF JUSTICE
                              Room 10-812
                              Washington, D.C.  20044
                              (202)  514-7238

Court Reporter:             THERESA M. SORENSEN, CVR-CM
                              Official Court Reporter
                              333 Constitutional Avenue, N.W.
                              Room 4808-B
                              Washington, D.C.  20001
                              (202)  273-0745

Pages 1 through 31

Proceedings reported by stenomask recording, transcript
produced by transcription.

*PROCEEDINGS*

THE DEPUTY CLERK: This is the matter of Landmark Legal Foundation versus the EPA, Civil Action 2000-2338. Mr. Hutchinson for the plaintiffs, Mr. Humphreys for the defendants.

THE COURT: All right, this is a hearings I'm conducting as motions judge in the unavailability of the assigned judge, Judge Roberts.

Mr. Hutchinson, the plaintiff's counsel, has requested to participate by telephone, and is on the speakerphone in the courtroom. The Court will hear the plaintiff's motion for preliminary injunction. And Mr. Humphreys representing the defendants is present.

Go ahead, Mr. Hutchinson.

MR. HUTCHINSON: Thank you, Your Honor. I appreciate the accommodation in allowing me to appear via telephone. Due to the kind of last minute nature of this hearing, it was almost impossible to get there.

THE COURT: I think this is a hard weekend to get reservations here.

MR. HUTCHINSON: Well, that's true, with the Ricky Martin concert and all, it was going to be tough. But I appreciate the accommodation.

THE COURT: You haven't seen our Washington Post today, but there's a great picture that Ricky got the

President Elect up on the stage with him dancing, so it was pretty good.

MR. HUTCHINSON:  That must have been quite a sight. I'll have to get one of those and put it in my scrapbook. Probably the first of many dances for the President Elect.

Unfortunately, the reason why we're here today is related to the end of the administration, and that is that for more that four and a-half months Landmark Legal Foundation has been seeking information from the EPA pursuant to a Freedom of Information Act request submitted on September 7th.

Before I go too far into the chronology of the thing, I think it's important as an overview both that since late September of the year 2000, Landmark has been engaged with the EPA in on-going discussions back and forth, and negotiation related to this FOIA request, in an effort to obtain information and to make it -- and to facilitate the EPA's compliance with the request, and to respond to its concerns about the request; however, we have been, despite the filing of this lawsuit and negotiations which rendered an agreement for proceeding in terms of a search for -- a limited search for documents, we've been unsuccessful in getting a meaningful -- a meaningful response from the EPA.

I think that the Court need only look at the footnote on page, I believe, seven of the defendant's

4

response, which I received yesterday via facsimile at about five o'clock to get a good feel for this situation.

In that footnote, a lot of good context here. This lawsuit was filed because the EPA did not respond to our Freedom of Information Act request, which wa a request for expedited consideration. There was no response to it at all, and after the statutory deadline passed for response, we filed this lawsuit. It was only at that time that we had any contact from the EPA. At that point, and prior to the time an answer was due, the EPA was quite excited about complying with the FOIA and working with us on a response.

As noted in both the motion and the response, there was an effort by the EPA to have a conference call prior to the answer deadline to address some issues. As the matter was in litigation, Landmark declined a conference call, but asked that their concerns be expressed in writing, and that was done.

And the letter, as the Court will note in reviewing it there in the exhibits, essentially said, "We don't understand what you're asking for, but we think it has something to do with these 88 regulations that are attached."

Landmark's response was, "Our FOIA request is very straight forward. We do not believe we could make it any more clear."

5

Can you all hear me?

THE COURT: Yes.

MR. HUTCHINSON: Okay, I heard a click. I didn't know what that was.

The FOIA request sought, essentially -- I can read this to the Court -- from Exhibit 1 of -- or Exhibit A of plaintiff's motion, "Identification of all rules or regulations for which public notice has not been given, but which public notice is planned by the EPA between September 7, 2000, and January 20, 2001, including but not limited to the rules and regulations reference in the attached news articles."

And the second point of the request was, "Provide us with the identification of third party contacts the EPA has had relating to the regulations or proposed regulations identified in the first step."

Now, I still to this day do not know how that could be more clear. Having said that, in a follow-up to that discussion, and as required by the local rules, when the parties met to discuss the case, a settlement conversation occurred which produced an agreement between the parties.

The agreement essentially was that Landmark would make an accommodation and allow the EPA to limit the scope of its search to the 88 pending regulations that the EPA had

USCA Case #25-5124      Document #2112198          Filed: 04/22/2025      Page 6 of 31

identified as those it thought were responsive to the FOIA
request.   Landmark's position was contingent on -- the
discussed reflected this, and a follow-up letter agreement
reflected this -- that the EPA would, within 7 days, provide
Landmark with an estimate of the scope of the search, or an
estimate of the universe of responsive information. That
was in the context of a fee waiver request.   Landmark wanted
a fee waiver.   The EPA questioned it.

       The EPA said, "We'll give you a good idea of what
the cost will be in seven days, because once we receive
assurances from Landmark that Landmark will pay for the
costs, we'll begin the search, and we'll be able to identify
in seven days a cost estimate."

       Now, that implied directly that within seven days
the EPA would have a pretty good idea of the universe of the
information out there responsive to the FOIA.   Moreover, the
EPA said, through Mr. Hines, EPA's in-house counsel, that he
was quite confident that EPA ought to be able to provide
most, if not all, of the responsive information within 30
days.   Landmark agreed to that, and put it in a letter and
sent it to the EPA.   The EPA made comments, I think through
Mr. Humphreys, and via telephone conversations back and
forth.   At the time I was at a CLA course and staying at a
hotel there in Washington.   So we had conversations back and
forth and through messages.

06/26/2001 TUE 13:10 FAX 2023543382    U.S.DISTRICT COURTS    ☑007
USCA Case #25-5124    Document #2112198    Filed: 04/22/2025    Page 7 of 31

7

The suggested changes were put in the agreement and sent back, and in accordance with the EPA's request, that because of the intervening holidays, we not date the letter as of Friday, the 16th of November. It was dated the following Tuesday in order to accommodate for intervening holidays. Now, that's important because it reflected an understanding that we were talking about calendar days and not work days. Otherwise, it wouldn't have been important to put it off a few days.

Now, the agreement provided that the EPA would -- if they were not able to meet their obligation to provide responsive information within 30 days, the EPA would notify Landmark within 20 days, and they did not do that.

Now, we sent them a letter, sent a letter to their counsel on the 15th of December and said, you know, the deadline is looming, and we haven't heard anything, let alone receive any information, which the EPA agreed to provide as we went along, and we wanted to know if they were going to comply.

Now, in Mr. Humphreys's response today, he says that it's because Landmark did not send a copy of this letter to EPA's counsel that it somehow relieves the EPA of notice that this deadline was looming. But it does not. It's not our responsibility to communicate with the government's client.

Now, all of this is important because we have not received any meaningful information in response to this FOIA request, let alone in response to the agreement that was made by the parties. Moreover, or in particular, we have not received a single piece of paper from any office of a senior political appointee at the EPA, which is the logical place to look for information responsive to this FOIA request.

Now, we have largely unresponsive information from Region 9, from an office there, a couple offices in Region 6, some offices in region 7, and -- but nothing from down the hall there at EPA headquarters. And every time Landmark has attempted to seek either a copy of -- a signed copy of this agreement, first of all, or some assurance as to what steps are being taken in terms of accomplishing this search, we have been frustrated with either no response or an inadequate response. In the EPA's letter of December 21, wherein they say -- they notify Landmark that they're not going to be able to meet the 30-day deadline, which they claimed is 30 working days, the EPA points out that not all offices had received Landmark's FOIA request. Despite that, in the response today, the EPA represents, I believe, through Ms. Person, that back in October all offices were notified of this FOIA request. Now, which one is it, and how could the EPA have intended to comply with the agreement

reached here between the parties if it did not follow up immediately by notifying all offices that this agreement was in place and that the search should take place?

Now, all of this is by way of demonstrating how it is Landmarks -- or it is clear from the record that the EPA has no intention of complying with either this FOIA in a timely way, or it's agreement to comply with -- or to carry out the search in terms of the limited scope agreed to by the parties.

Now, for the first time, yesterday when reviewing the government's response here, the EPA has indicated that the 88 regulations that they identified as responsive to our request is actually 11 regulations. Now, they've never told us that before, although we've asked for it. We've asked for essentially, and the agreement called for progress reports on this search, we've not received anything akin to that, and now for the first time they're telling us it's actually only 11, but we're still not able to comply with our agreement. That's in addition to their acknowledgment that they failed to notify all of the offices of the search. And perhaps most importantly, the information that is coming through, which again, although it's from several offices, in the grand scheme of the EPA it's almost a zero response, and in terms of actually responsive information, it's nothing. There is no parent point person at EPA who is in charge of

this search, who is in charge of gathering this information

and providing it to Landmark.  It's all coming from all over

the country, and it's largely unresponsive, as I've said.

Now, it is clear that EPA is not going to comply

with this FOIA search, and because the political appointees

who are the natural places to look for this information,

because those people are gone as of noon tomorrow, each

passing day has created a pressing and more imminent harm to

Landmark's ability to obtain information, and that goes to

the argument presented in the papers.

The government asserts that there is no harm here

for Landmark because there's an Archives Act that requires

the EPA to preserve information.  That has absolutely

nothing to do with Landmark's ability to obtain that

information.  Aside from the fact that the government can't

tell us what they've looked at or where they're looking, or

anything along those lines, the government does not

represent in its response today that it can tell us any --

you know, who's in charge of tracking this information.  It

cannot tell us, or it does not tell us, who's in charge of

making sure that, or whether there has been an effort

undertaken to make sure that potentially responsive

information is being kept together in such a way that can

reviewed and provided to Landmark.  And I'd point the Court

to *McGhee versus CIA*, and the *Department of Justice versus*

06/26/2001 TUE 13:11 FAX 2023543382    U.S.DISTRICT COURTS    ⌐011
USCA Case #25-5124    Document #2112198    Filed: 04/22/2025    Page 11 of 31

11

*Tax Analysts*, two cases which support the proposition that preservation alone does not satisfy FOIA, that when the government move information and makes it either more difficult or makes it so that it will take more time for the requester to obtain information, then that is a violation of FOIA, and that's exactly what we have going on here. That point goes to Landmark's likelihood of success on the merits in this case. We complied with the FOIA, and the government is frustrating the FOIA. It's plain and simple, and it is straight forward.

Now, in terms of the harm to the agency, there's none. And the government claims that there's no public policy here, and that Landmark essentially presents a boilerplate argument, but it is a boilerplate argument. The public does have a right to know what's going on, and the public in particular has a right to know what third parties, what outside forces are influencing political appointees at the Environmental Protection Agency, and pushing them or influencing them in the enactment of regulations at the last minute of an administration. So the public policy issue is apparent. It's obvious, and that satisfies that requirement for preliminary injunction.

Now, in terms of the relief that Landmark is seeking today, although this administration ends tomorrow at noon, the harm being faced by Landmark does not end tomorrow

at noon. There is on-going relief available to the Court, and that is, first of all, that the EPA ought to be required to stop moving anything that's not been moved without the EPA's proving to the Court that steps are being taken to preserve the universe of information that's responsive to our FOIA request; that the EPA can tell to Court exactly how and what, and why, and when, and where it has undertaken a search to identify these documents and other information, including hard drives, e-mail, and all that sort of thing, and we want the Court to require the EPA to comply with our full FOIA request. We want to Court to require that the EPA have a single point of contact for carrying out this FOIA request and implementing it, and we want the Court to require the EPA to give us and the Court a full explanation of what steps have been taken to identify responsive information, to catalog responsive information, to search which offices and when, and provide that to the Court posthaste.

I'd be glad to respond to any questions the Court might have. I realize this is a -- kind of a long explanation of what we're seeking here today and why, but the circumstances related to this case are such that in our effort -- in Landmark's effort to work with the EPA, we have been met with frustration after frustration, in that commitments are made, broken, and then complained about and

made to look as though it were Landmark's fault.  That is

not the case, and it should not be permitted by the Court.

Upon that, I'll cease.

      THE COURT:  All right.  Mr. Humphreys.

      MR. HUMPHREYS:  Good morning, Judge Lamberth.

      I have with me at counsel table Betty Lopez of the

Environmental Protection Agency, a person who I can identify

as being responsible for this FOIA request.

      Judge Lamberth, I'm going to ask you to deny the

plaintiff's motion for preliminary injunction in its

entirety, and there are several reasons for this.  I'm going

to begin with the context that was first raised by

Mr. Hutchinson in his remarks to this Court, and I think

that the Court should view this in it's context.

      This FOIA request first came in on September 7th

in the year 2000.  As we've explained to this Court, and as

explained to counsel in moving papers, and as we explained

to counsel -- excuse me, before we filed our moving papers,

this particular FOIA request went to the wrong office.  So

right off the bat there was a problem administratively.

They sent it to the Office of General Counsel.  They should

have sent it to the FOIA contact person, and that FOIA

contact person, Judge Lamberth, is clearly identified in EPA

regulations.  So that was the first problem.  We got --

      THE COURT:  Why did it take the agency from

September 7th to September 26 to walk it over from the General Counsel's Office to the proper FOIA person, and then all FOIA person did was give it back to the Office of General Counsel the next day?

        MR. HUMPHREYS: That was a question --

        THE COURT: Why would you lose all that time with that bureaucratic shuffle?

        MR. HUMPHREYS: That was a question that I did pose to my client as recently as yesterday. They didn't really have much of an explanation.

        THE COURT: I'll bet they don't.

        MR. HUMPHREYS: But what I can tell this Court, Judge, is that when it did get to the appropriate person, the very next day, on September 27th, we sent a letter to them and said, "We've got your FOIA request, and we're going to get right on top of it."

        The next thing I want to --

        THE COURT: Well, in getting right on top of it was to give it back to the Office of General Counsel, and it took another week before the Office of General Counsel tells the FOIA person, "You've got to give it to everybody else, too, not just to us."

        MR. HUMPHREYS: Right, and that --

        THE COURT: So a whole month is lost on something you have a statutory obligation to respond to in 10 days.

15

Explain that.

MR. HUMPHREYS:  Well, Judge, I'm not going to tell you that this was a perfect response by the agency to the administrative request.  They recognize that.  I recognize that.  I'm not going to do a song and dance and say that there weren't problems with the request.  But what I can say is that we've clarified those problems.  We have a person installed now, Ms. Lopez, who I've brought to the courtroom today.  She has recently come onto the agency within the last 10 days, and she was brought onto this agency just to address the type of concerns that have been raised in this case, and she's going to be addressing those concerns.

But let me go back to the historical context, Judge, because I think that's important as it relates to this case, and this court makes a good point.  I asked that same precise question, why did it take three weeks, from the 7th to the 26th?  Was it in the same building?  Why couldn't it have been done?  And I got the sort of like it was just percolating through the bureaucracy.  I don't accept that, Judge.  I don't suggest that this Court should accept that, but that does not call for this Court to invoke its powers extraordinary relief that's inherent with injunctions.

Let me continue in an historical context of this, Judge Lamberth.  We wrote them a letter on October 26th. Now, this is -- first of all, once it got to the appropriate

16

FOIA contact person on the 26th, the plaintiffs filed their lawsuit three days later. It didn't make any other contact, and I'm not suggesting that they had an obligation to do such a contact, Judge, but one would have thought that if they were as interested in this request as they've suggested they are, they would have made a contact. They went ahead and filed their lawsuit, which was their right to do. We responded to them the very next business day. We sent it to the OGC, and the OGC took a week or two to make a determination what the scope of this request is. Now, let me move a month ahead to October 26th. Mr. Hutchinson has made much ado about the fact that, sure, everybody understood the nature of our request. Maybe the EPA was imbeciles for not understanding, but, Judge, I would suggest to this Court -- I won't suggest, I will state out right -- that the regulations provide for just such a procedure you are, just such an analysis. I would point this Court to 40 CFR 2.109, which says that if the agency has problems, if they have issues, if they have questions about that FOIA request, they have a right and an obligation to contact the requester.

       And I would just ask this Court, Judge, to look at Exhibit 5, which is our letter of October 26th to the requester, and Exhibit 6, which is their response. And I would ask this Court to draw its own conclusions about

17

whether the letter that we sent to Landmark on the 26th in

this inaugural season -- let me coin a phrase -- was sent

for purpose of evasion, whether we were trying to do a song

and dance, whether we were trying to be evasive, whether we

were trying to be dilatory.  That letter asked straight

forward questions about the scope of that request.  We had

every right under the regulations to send such a letter.

Then I would ask this Court to look at Exhibit

Number 6.

THE COURT:  Well, before you go to that point,

there's a second mistake before then, and, that is, in your

affidavit you say that you overlooked initially the request

for treating this on an expedited basis.

MR. HUMPHREYS:  Uh-huh.

THE COURT:  Then when that was discovered, you send

a letter October 4th asking for more information about why it

should be expedited.

MR. HUMPHREYS:  Right.

THE COURT:  But you admit that you have no

regulations to implement the procedures to expedite.  So you

admit the agency is violating the statute right there.

MR. HUMPHREYS:  Well, we --

THE COURT:  So in the October 4th letter, the

agency has already violated the statute because they have no

procedures to expedite, right, what the statute requires?

18

MR. HUMPHREYS: But I also believe that that declaration says that there is a form letter that they formulated that they did send out. So if there is --

THE COURT: Well, that you didn't provide to the Court, so I don't know what's in it.

MR. HUMPHREYS: Okay. I'm sorry. I'll see if we have that. I don't think that we do, but there was a standardized form that was sent out to them, to which as I understand --

THE COURT: What is it that on the face of this complaint, of this original request from September 7th, would not show the need for it being expedited? I don't understand. They say the administration is leaving office. We want to do this right away. What else would you need to figure out that this should have been expedited? So besides violating the statute there, I don't understand how you can take the position that it shouldn't have been expediting without any further inquiry once you knew that request had been made and you knew the context of the request. Why isn't that another violation?

MR. HUMPHREYS: Well, Judge, the only thing I can say is, again, what was communicated to me is that the person who looked at this, who I believe was a FOIA official, didn't catch it, and it wasn't caught until John Hines, in the Office of General Counsel, said, "This is an expedited

request.  You need to get on it right away."  And, again,

Judge, I hate to --

      THE COURT:  Well, to "get on it right away" was to

ask the plaintiff to justify it; it wasn't to expedite it,

right?

      MR. HUMPHREYS:  Well, that's an appropriate

procedure, I believe, for us to ask for --

      THE COURT:  What happens if it had been expedited?

Is there some procedure the agency would have that would have

made a difference in how this was handled if it was

expedited?

      MR. HUMPHREYS:  Well, as I understand it, an

expedited request has to be done within 10 days, and if it

had been expedited, I believe that there just would have been

a response automatically.  But there was apparently questions

that were raised about the initial request to -- the EPA

said, "We need further information," so a request was made to

the Landmark to provide them with further information.  And

so that's all I can say about that, Judge.  As soon as we

caught it, we jumped right on it again, and we made the point

that we have to -- we have to get more information to them.

But I also note, I believe, Judge, that they never responded

to that -- that request for additional information.  So,

Judge, I'm -- I'm standing up here before you, Judge, willing

to take my lumps, but I don't want to take my lumps from this

Court alone because they had things that they could have done that they refused to do, for whatever reason.

Let me jump ahead if I've satisfied this Court to the October 26th letter. Once again I'm going to ask this Court to read our letter to see if it's nasty, if it's evasive, whether we're trying to do something dilatory. We haven't.

Then read Exhibit 6 of our -- that's attached to your motion, and read their response, and I'd ask that this Court look at the tone as much of the words, which is, hey, we should have known better. We should know better. We're not going to clarify it any more, and that's that. That just did not help the process along. So, I mean, that's more or less the context.

One other thing I -- he said so much here, I'm trying to get everything that I put in my notes. There is a regulation, by the way, that requires the requester to submit it to the appropriate FOIA authority, but I think, you know, Judge, we're beyond that point. I agree with you, that it shouldn't have taken three weeks once it was sent to the wrong place. We should have done it quicker. It will be done quicker. In any event, in my mind, Judge, I would argue a very reasonable and logical position, assuming that we were wrong in that, that doesn't necessitate this Court invoking its extraordinary equitable powers.

21

        The Court -- I mean, the EPA has an orderly and
organized system that we have put in place pursuant to these
regulations -- to regulations, and notwithstanding what
Mr. Hutchinson says, those regulations are very much
relevant, and they're very much applicable to the facts of
this case.  There are regulations that, if I can --that
have been attached to our brief, and, specifically, to the
O'Donnell declaration.  Exhibit A of the O'Donnell
declaration deals with regulations, standards and
guidelines.  That's precisely what we're talking about here
today.  I'd ask that this Court read Exhibit A in
conjunction with Exhibit B, which deals with the rule-making
dockets.  Taken together, these are permanent records.  That
means, if you read A and B, Judge, and I'll tell you what it
means, understanding that that's my job, that the agency
maintains these records for 20 yores, the very records that
are at issue in this litigation.  After that 20-year period,
then they are still warehoused in the archives center.

        As it relates to a FOIA request, again, a part of
the O'Donnell declaration, she refers this Court in her
declaration to Exhibit C.  That goes to FOIA, Freedom of
Information request files.  Those request files, when you
read the exhibit, and this is an actual scheduled -- actual
rule-making schedule, that document says that if there is an
uncontested request and we respond to that request, we still

06/26/2001 TUE 13:14 FAX 2023543382     U.S.DISTRICT COURTS     @022
USCA Case #25-5124     Document #2112198     Filed: 04/22/2025     Page 22 of 31

22

hold on to the information for two years. If there is a challenge, then we hold onto it for six years to give a requester such as Landmark an opportunity to prosecute and appeal.

But let me talk about, Judge, now that we've set the context, I want to focus in a little bit on the specifics of the reason why we're here today.

First of all, I believe, as I read the moving papers of Landmark, and I look at page 8 of their motion, I believe that the scope of this particular motion and this particular hearing, on the last sentence of page 3 they say, "Landmark is simply requesting the Court to preserve the status quo by granting this motion, thereby making it easier for the EPA to respond to plaintiff's FOIA's request, and for the plaintiff and the Court to evaluate EPA's response."

Now, Mr. Hutchinson adds wittingly, or unwittingly, sort of attempted to intertwine the two, the subsequent request with what the real reason that I believe that we're here today. He's saying essentially, Judge, as I read this motion, "Judge, stop the process so no one walks off in the middle of the night with EPA documents that are under consideration."

I'd ask that this Court not confuse the original request and the purpose of this motion. He already has a legal remedy in terms of the substantive FOIA aspects of

23

this case. If in fact the basis of his request, Judge
Lamberth is to say "Look, we're concerned by this
transition, and what may happen as a result of the
circumstances of this transition, and documents may be
spirited away, or taken away, or burned, or destroyed, or
stuffed in briefcases, that sort of thing. I've already
told this Court, or argue to this Court that there are three
regulations that absolutely preclude that. He --

THE COURT: If that is so clear, and if agency
officials understood it that clearly, what was the purpose of
the January 2nd e-mail?

MR. HUMPHREYS: Could you give me the substance of
what that e-mail was?

THE COURT: Well, you filed it with me. You didn't
file the e-mail, but you put it in the affidavit of --

MR. HUMPHREYS: Is that the Lopez e-mail?

THE COURT: Let me see who -- no, Ms. Person said
on January 2nd she sent by E mail the following statement to
all of the FOIA coordinators or offices which are responding
to the request, and she put in there all this stuff about,
"make sure during this time of transition that all responsive
records are handled correctly and appropriately preserved."

MR. HUMPHREYS: Right.

THE COURT: If it's so clear, as you say, from
these NARA and other regulations that these have to be

24

preserved, what was the point of that e-mail?

MR. HUMPHREYS: And I would point this Court, before I answer that question, to another e-mail that reinforces that point. I would refer this Court to Exhibit Number 7, I believe, the Lopez declaration, or the Lopez e-mail, which more or less says the same thing, and that's identified as number 7. If you look at Exhibit No. 7, and look at the second page of that, which actually comes from a very high official, a Mary Anne Frolich, in the agency, she says more or less the same thing. But, Judge, I would submit to you that that's of course our point, that we're going out of our way, even though there are regulations that tell us what to do specifically, out of an abundance of caution, as we like to say in the law, let's follow this up with e-mails to everybody that say, "Just in case you're unaware of these regulations, we are telling to you stop. We are telling you not to tamper with these documents. We are telling you not to remove these documents." So I would argue that those e-mails support our position, that we where being diligent, that we weren't just going to say, "Well, the regs are out there, and either the bureaucrats know them or they don't, and let the chips fall where they may." We said, "No, let's send out the e-mail to back up these regs to make sure that if there is any question, that they are not tampered with."

Judge, can I talk to you just a minute about the

25

likelihood of success on the merits in the this case?

       THE COURT:  Sure.

       MR. HUMPHREYS:  This case can't succeed, Judge Lamberth.  Do you know what the core of their argument is based upon?  The core of their argument is based upon Exhibit F of their motion, which is a news report.  Now, outside of the fact -- and this news report suggests that --

       THE COURT:  I know, that deals with the Whitehouse.

       MR. HUMPHREYS:  That deals with the Whitehouse.

       THE COURT:  I agree, that doesn't have anything to do with this.  I agree.

       MR. HUMPHREYS:  It has nothing whatsoever --

       THE COURT:  I took it their motion dealt with, they have been so mistreated by EPA, with so many violations of the procedure and then the agreement here, that EPA can't be trusted to preserve these records.  I took it that's what they're saying.

       MR. HUMPHREYS:  Well, again, my response --

       THE COURT:  Without a Court order, that EPA can't be trusted on its own without a Court order that then threatens contempt.

       MR. HUMPHREYS:  Well, and my response to that is essentially this:  We've told this Court about the regulations.  I'm going to introduce, and I'm going to talk a little bit about Ms. Lopez, and I'm happy to put her on the

26

stand.  I don't think that's going to be necessary, but I'm
happy to do that if the Court wants.  She's going to tell you
a couple of things if she were put on the stand.  Let me make
her proffer for you.  She's been there.  She's been at EPA
for 12 days.  As soon as she came on, this was thrown on her
lap.  She came from an agency, the SEC, where she did a lot
of FOIA work.  She was brought in as an expert.  The agency
recognized that it had a problem.  They asked Ms. Lopez to
take the bull by the horns.  Since she has come on board, she
has worked virtually non-stop on this case bringing it up to
par.  Judge, I recognize that there are problems with this
administratively, and I'm going to ask you --

        THE COURT:  Well, why did they give the estimate on
November 21st, then -- the agreement is dated November
21st --

        MR. HUMPHREYS:  The estimate --

        THE COURT:  -- that they could do this in 30 days,
and they still have done virtually nothing, and they said
they would do a rolling production, and they haven't rolled
anything except these minimal things he talked about today?

        MR. HUMPHREYS:  Well, there has been -- there has
been a submission, or a deliverance, or surrender of files to
the plaintiff.  There have been approximately 1500 documents
that have been given to him.  Now, he says that they're not
relevant, but a lot of that has to go to, again, if we had

27

had the request refined early on, these problems would not

have arisen.  We are continuing to make progress in this --

in this FOIA request.

THE COURT:  Well, how did they come up with this

30-day estimate, and then they can't meet what they

estimated?  Why would they make a 30-day estimate if they had

no idea how long it was going to take?  Explain all that to

me.

MR. HUMPHREYS:  You know, Judge, there are certain

things that they don't prepare you for in law school.  I

asked the -- I'm going to admit, Judge, that I was a part of

that November 16th phone conference with Mr. Hutchinson,

where I looked to the client and I said, you know, "This can

be done?"  And the client said that it could be done.  They

came back later and said that the request was more expansive,

it was broader.  Now, Judge, in it's worst case scenario, you

may want to characterize that as ineptitude.  I hope you

don't, but it certainly does not rise to the level, Judge

Lamberth, of you saying, "I'm going to punish you by imposing

equitable sanctions on you."

What I can do is, I can make representations to

this Court, and the client has authorized me to do it on the

record, that, number one, the bottom line, Judge, everything

is going to be done by February 16th.  And that's

approximately less than a month from now.  Now, I've asked

28

them and I've re-asked them. I've asked them in any variety
of ways. I said, "I cannot go to the Court -- we've changed
the schedule a couple of times -- I cannot go to the Court
and make this representation, that it's going to be done by
16th, if it can't be done."

          You can look at --

          THE COURT: But you came with the Court with that
November agreement, which you filed with the Court, and said
it could be done in 30 days from November 21st. And whatever
you put in your footnote about the agency thought it was
business days, there's certainly no way the Court, looking at
that, would have thought it was business days, and the
plaintiffs certainly have a good argument that there's no way
they would have known it was business days. So it was
December 21th 1st. That's far different than now saying you
need three times that much time to --

          MR. HUMPHREYS: Well, we need until February
16th --

          THE COURT: That's three times as much time as they
estimated in November. They estimated 30 days then. Now
you're saying it will take 90 days. And if they had
expedited it, it had to be done in 10 days, but they
improperly didn't expedite it.

          MR. HUMPHREYS: Well, one of the reasons we need
this additional time --

29

THE COURT:  I'll tell you, I don't think there is anything else you can say that is going to keep me from entering this preliminary injunction.  I think in light of all of the violations that we've talked about here, the Court should not give the presumption of regularity to the agency to think that the agency will carry out its duties here.  The plaintiff's motion for a preliminary injunction is granted. The Court will order that the agency takes steps to ensure the preservation of any of this information.  I'll issue a written order this afternoon based on the hearing we've had today.

MR. HUMPHREYS:  Okay.

THE COURT:  The EPA is enjoined from transporting, removing, or in any way tampering with any information potentially responsive to Landmark Legal Foundation's September 7th FOIA request.

MR. HUMPHREYS:  Okay.  Now, is that -- I want to get clarity from the Court.  You've said that -- if you would just read that order, Judge, one more time.

THE COURT:  Okay.  I'm reading their motion from their proposed order.  The only thing I may add to their proposed order is "EPA and its agents and officials," to make sure that people understand they're personally accountable to the extent they learn of the order.

MR. HUMPHREYS:  All right.  So the extent of the

order is basically just not to move, or tamper, or transport the documents?

THE COURT:  Right.

MR. HUMPHREYS:  And that's the extent of it?

THE COURT:  Right, pending further order of the court.

MR. HUMPHREYS:  Well, thank you very much, Judge.

THE COURT:  I'll consult with Judge Roberts about whether he wants to keep the case or whether he's going to transfer the case, but that's all I need to do for today.

Anything else the plaintiff wants to say?

MR. HUTCHINSON:  Not at this time, Your Honor. Thank you.  And is there a -- will you be adding the language that you --

THE COURT:  Yes.  I'll have a written order shortly.  I've got another hearing with 34 lawyers in the next courtroom I've got to go do, but as soon as I finish it, I'll be back.

MR. HUMPHREYS:  Judge, could I ask the Court's indulgence -- I know you're in a hurry -- for just 30 seconds?  I don't have a copy of that order.  I'd like to maybe comment on it.  I'm not so sure I will, but I just want to make sure -- I want to get clarification since this Court has ruled against the agency.

THE COURT:  Right.

31

MR. HUMPHREYS:  The Court's indulgence for just a motion.

(Brief pause in proceedings.)

MR. HUMPHREYS:  Judge, I can live with this order.

THE COURT:  All right.

MR. HUMPHREYS:  Thank you very much.

THE COURT:  All right.

(Whereupon, the proceedings in the above-entitled matter were adjourned at 10:27 a.m.)

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Theresa M. Sorensen, CVR-CM
Official Court Reporter