[ORAL ARGUMENT NOT YET SCHEDULED]

No. 25-5124

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

J.G.G., *et al.*,

*Plaintiffs-Appellees,*

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00766
The Hon. James E. Boasberg

## REPLY IN SUPPORT OF PLAINTIFFS-APPELLEES'
## MOTION TO DISMISS

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104

Lee Gelernt
    *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar C. Jadwat
Sidra Mahfooz
Hina Shamsi
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
lgelernt@aclu.org

| | |
|---|---|
| Arthur B. Spitzer<br>Scott Michelman<br>Aditi Shah<br>AMERICAN CIVIL LIBERTIES<br>   UNION FOUNDATION OF<br>   THE DISTRICT OF<br>   COLUMBIA<br>529 14th Street, NW, Suite 722<br>Washington, D.C. 20045 | Somil B. Trivedi<br>Bradley Girard<br>Michael Waldman<br>Sarah Rich<br>Skye Perryman<br>Audrey Wiggins<br>Christine L. Coogle<br>Pooja A. Boisture<br>DEMOCRACY FORWARD<br>P.O. Box 34553<br>Washington, DC 20043 |

*Counsel for Plaintiffs-Appellees*

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................1

ARGUMENT .....................................................................................................3

I.     There is No Basis for Appellate Jurisdiction...................................................3

     A.     This order is not an appealable final judgment, injunction, or collateral order........................................................................................3

     B.     The government does not come close to satisfying the standard for mandamus ......................................................................................6

II.     The Government's Attempts to Manufacture Ambiguity in a Clear Order Do Not Confer Appellate Jurisdiction.....................................................7

CONCLUSION ................................................................................................11

**INTRODUCTION**

The basic premise underlying the government's arguments is wrong. It claims the district court ordered it "to comply with one of two unconstitutional options in just 7 days." Gov't Reply 3 (identifying these options as "regaining custody" or "face criminal prosecution"). But the district court has not ordered either of those things. Its order could not be clearer: "*If* Defendants opt to purge their contempt, they shall file by April 23, 2025, a *declaration* explaining the steps they have taken and will take to do so." Order ¶ 1, ECF No. 80 (D.D.C. Apr. 16, 2025) (emphasis added). Alternatively, "[i]f Defendants opt not to purge their contempt, they shall instead file by April 23, 2025, *declaration(s)* identifying the individual(s) who" chose to remove class members despite the court's unambiguous order. *Id.* ¶ 2 (emphasis added). That's it: One way or another, all the government must do is file a declaration, as the district court continues to investigate its likely contempt.

The government also incorrectly claims "the *only* 'purge' option" the district court gave was to "regain[] custody" of class members. Gov't Reply 4 (emphasis added). But again, the order is plain: "The Court will also give Defendants an opportunity to propose other methods of coming into compliance, which the Court will evaluate." Mem. Op. 43-44, ECF No. 81 (D.D.C. Apr. 16, 2025) ("Order"); Order 1-2, ECF No. 91 (D.D.C. Apr. 18, 2025) ("Apr. 18 Order") (emphasizing "voluntary" nature of these purge options).

1

Critically, the government concedes executive branch officials "can be sanctioned" for violating court orders and can be subject to "civil contempt" and "criminal contempt." Gov't Reply 5-6. Given that, the government barely disputes that the district court can require declarations and other fact-finding as it seeks to "identify the individual(s) whose conduct caused the noncompliance," Apr. 18 Order 2; *see* Mot. to Dismiss 18-19.

At bottom, the government is improperly seeking to pre-litigate issues that may or may not ever arise in this case. A series of steps remain between now and any prosecutorial referral, let alone an independent prosecutor. The government would have to refuse to purge the contempt, whether through the option the district court identified or one the government devises. Then—as the order here specifically contemplates—the court would need to investigate further to identify potentially contumacious officials, a process that may require additional fact development. *See* Order 44 (next step might require declarations, depositions, or live testimony). Once that process is complete, the district court would need to determine whether to pursue a criminal referral or other sanction. *See United States v. Latney's Funeral Home, Inc.*, 41 F.Supp.3d 24, 36 (D.D.C. 2014) (listing other possible sanctions).[1] After

---

[1] The government claims civil contempt is off the table, Gov't Reply 5 n.1, but civil contempt remedies can include "compensatory relief" for injured parties, *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 76 (D.D.C. 2003) (collecting cases). Regardless, that uncertainty provides further reason why appellate review is premature.

that, the Department of Justice would have to make its own decision whether to prosecute. Then, and only then, does the possibility of an outside prosecutor under Rule 42(a)(2) come into view. *See* Apr. 18 Order 2 (While "the Court might eventually refer this matter for prosecution, we are not at that juncture.") (citation omitted). This Court should not review the final possible step in this process before any of these other steps have even occurred. *Cf. Pearson v. Callahan*, 555 U.S. 223, 241 (2009) (reiterating the "counsel not to pass on questions of constitutionality unless such adjudication is unavoidable") (cleaned up).

## ARGUMENT

### I.   There is No Basis for Appellate Jurisdiction

"Plaintiffs' constant refrain is that appeal is premature." Gov't Reply 3. True. *See* Mot. to Dismiss 13-23; *cf. Salazar ex rel Salazar v. D.C.*, 602 F.3d 431, 436, 443 (D.C. Cir. 2010) (contempt appealable once court imposes "specific, unavoidable penalties"). The district court has not charged anyone with contempt or imposed any penalties, and basic factual investigation remains ongoing. There is accordingly no final order, no appealable injunction, no collateral order, and no basis for mandamus.

### A.   This order is not an appealable final judgment, injunction, or collateral order.

The district court's order does not mark the end of its contempt inquiry, let alone make conclusive liability determinations and impose "specific, unavoidable sanctions," *Salazar*, 602 F.3d at 436. Rather, the order merely continues the district

3

court's investigation into what happened on March 15, as Rule 42(a) requires. *See* Fed. R. Crim. Pro. 42(a) (referral for prosecution only "after notice" to individual contemnors and once "the essential facts" are known).

Allowing this investigation to continue is critical, because the government has not yet provided necessary information. At a hearing two days after the March 15 TRO issued, for example, the district court sought details about flights that took off *during* its emergency hearing—which the government had refused to disclose that same evening, even after the court recessed so the government could gather information about any such flights. *See* Order 6-7; Tr. of Proceedings 5-6, ECF No. 25 (D.D.C Mar. 17, 2025) ("Tr. of Mar 17 Hr'g"). The government again provided no meaningful response at this follow-on hearing, *id.* 6, and even moved to vacate the hearing altogether, *see generally* Mot. to Vacate Resp., ECF No. 24. The district court then ordered the government to provide this information in writing, under seal and ex parte if necessary, or even in a SCIF. Tr. of Mar 17 Hr'g 10; Min. Order of Mar. 17, 2025; Min. Order of Mar. 18, 2025. The government responded by invoking the state secrets privilege, ECF No. 56, even though government officials had already published much of the requested information on social media. *See* Pls.' Resp. to Defs.' Invocation of State Secrets 7-9, ECF No. 69 (D.D.C. Mar. 24, 2025).

4

The district court's latest order merely marks the next phase in these ongoing efforts to identify what happened when and who did what, a necessary precondition to any possible referral for prosecution. Its order to provide a declaration is thus plainly not a final judgment or appealable injunction.

The same goes for the district court's suggestion that the government may voluntarily purge its contempt. If that were appealable, most contempt inquiries would be appealable as a matter of course before they even got off the ground.

The collateral order doctrine likewise does not apply. As this Court explained just days ago, the collateral order doctrine's requirements are "stringent." *O'Connell v. U.S. Conf. of Cath. Bishops*, No. 23-7173, slip op. at 4 (D.C. Cir. Apr. 25, 2025). The government concedes that, in the mine run contempt case, the collateral order doctrine provides no basis for interlocutory appeal before a final determination of culpability and imposition of sanctions. Gov't Reply 9. But it suggests a special new rule for "criminal contempt against the Executive Branch." *Id.* 9-10. It cites no case recognizing such an exemption. *Id.* (no cases about contempt). And permitting immediate interlocutory appeal only for the government would fly in the face of the general principle that the collateral order doctrine applies categorically, not as a one-off. *Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100, 107 (2009). What's more, it is entirely unclear what about its claims cannot "be effectively reviewed on appeal," *O'Connell*, No. 23-7173, slip. op. at 4, since the

5

government ultimately *concedes* it can be subject to "sanctions" and "contempt." Gov't Reply 5-6; *see also Land v. Dollar*, 190 F.2d 623, 633-34 (D.C. Cir. 1951); *In re Contempt Finding in U.S. v. Stevens*, 663 F.3d 1270, 1271 (D.C. Cir. 2011). There is accordingly no basis to carve up contempt investigations involving the government through piecemeal interlocutory appeals.

### B. The government does not come close to satisfying the standard for mandamus.

Because the injuries the government asserts are a mix of premature, speculative, and foreclosed by binding precedent, it likewise is not entitled to the extraordinary remedy of mandamus. The district court has not yet imposed any sanctions, referred anyone for prosecution, or ordered the government to facilitate anyone's return. Mandamus is an "extraordinary remedy," one "reserved only for the most transparent violations of a clear duty to act." *In re Center for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quotation omitted). It is not a shortcut to interlocutory appellate review of hypothetical injuries.

The government's concerns are not only speculative, but also wrong on the law. Just weeks ago, the Supreme Court unanimously held the Executive Branch must "facilitate" the return of a person that it wrongfully deported to El Salvador. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025). In all of its arguments about the purge option the district court identified, the government does not even acknowledge this Supreme Court decision. If it is appropriate to *order* the

6

government to facilitate a wrongly deported person's return, it cannot be unlawful to offer this remedy as an *option*. Likewise, the Supreme Court has already rejected the government's view that "only the Executive Branch" can bring a "prosecution for contempt." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 799-800 (1987). The government's suggestion that it can nullify the judiciary's ability to punish its contempt is therefore "without merit." *Id.* Thus, the government would face no "constitutional harm," Gov't Reply 5, let alone the "clear and indisputable right to relief" mandamus requires, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016), even if the district court had ordered either of these things.

II. **The Government's Attempts to Manufacture Ambiguity in a Clear Order Do Not Confer Appellate Jurisdiction.**

The government again spends much of its time disputing the district court's probable cause determination. But it never explains how those arguments supply a proper basis for appellate jurisdiction over the district court's ongoing efforts to identify potential contemnors.

Regardless, the government is wrong. "[A]n alleged contemnor may not avoid" sanctions by putting forth "tortured constructions of the provisions of the order." *In re Holloway*, 995 F.2d 1080, 1084 (D.C. Cir. 1993) (cleaned up). Otherwise, litigants could disregard court orders at will. The government's post hoc effort to manufacture ambiguity is its own kind of defiance—one that other Circuits have rightly rejected. *See Abrego Garcia v. Noem*, 2025 WL 1135112, *1-2 (4th Cir.

7

Apr. 17, 2025) (Wilkinson, J.) (rejecting implausible interpretation the government advanced to avoid complying with a Supreme Court order).

The government mainly argues the word "remove," standing in isolation, could technically have meant a prohibition only on leaving U.S. airspace. Gov't Reply 12-17. But that is not how the government understood the order at the time: "Your Honor, I understood your intent, that you meant that to be effective at that time." Tr. of Mot. Hr'g 5-6, ECF No. 51 (D.D.C. Mar. 21, 2025). Nor does it identify any other time it has asserted the U.S.-airspace theory. To the contrary, just weeks ago, the same government attorneys argued that a removal is ongoing "until the Secretary relinquishes custody of the detainee," including once individuals have left U.S. territory. Resp'ts' Opp. to Mot. for Stay of Transfer 25-27, *Escalona v. Noem*, No. 25-cv-604 (D.D.C. Mar. 10, 2025), ECF No. 14. The supposed ambiguity it now asserts was contrived exclusively to excuse its defiance of the district court's order in this case.

Critically, the government also does not acknowledge that the district court's written order enjoined removals "[a]s discussed in today's hearing." Min. Order of Mar. 15, 2025. Despite its repeated insistence that the written order must control, the government ignores the written order's opening words.

The government instead claims it was entitled to disregard the hearing as a means of interpreting the written order, despite the order's explicit reference to the

8

hearing. Gov't Reply 15. But the district court's oral commands supplied the obvious "context" for the "intended coverage" of its written injunction, *United States v. Young*, 107 F.3d 903, 907-08 (D.C. Cir. 1997). And this Court has already held that statements "at the hearing on the injunction" inform the meaning of a court order for contempt purposes, and may even themselves be binding. *Common Cause v. Nuclear Reg. Comm'n*, 674 F.2d 921, 927 (D.C. Cir. 1982) (considering also "the mischief that the injunction seeks to prevent"); *see also In re LaFande*, 919 F.3d 554, 562-63 (D.C. Cir. 2019) (district judge's "in-person order sufficed to compel" compliance "backed by the contempt power"); *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 75 (D.D.C. 2003) ("statements throughout the hearing indicate[d]" the court's order was "not too vague to support a finding of contempt"). It would gravely diminish judicial authority if litigants were free to simply disregard a court's oral commands, especially where, as here, the court issued clear and direct orders in the face of an emergency of the government's own making.[2]

The government also cites two hearing statements out of context, but neither diminishes the clarity of the district court's orders. First, it highlights the court's

---

[2] The government claims Plaintiffs agreed the oral commands were not binding or incorporated into the written order. Gov't Reply 15 n.2. That's wrong: Once the government violated the court's order, and the government sought a stay of the TRO's *prospective* bar on further AEA removals, Plaintiffs explained the order to turn planes around was not at issue because the government had already violated it and class members were no longer on the planes.

9

statement that "I will issue a minute order memorializing this so you don't have to race to write it down." Tr. of Proceedings 42, ECF No. 20 (D.D.C. Mar. 15, 2025) ("Tr. of Mar. 15 Hr'g"). But that *confirms* the subsequent minute order was meant to memorialize the same orders given at the hearing. The government further suggests that this statement invited the government to wait to comply until a written order, but the court said exactly the opposite: "This is something you need to make sure is complied with immediately." *Id.* 43.

The government also mentions the court's statement, earlier in the hearing, that "once they're out of the country, I'm not sure what I can do there." *Id.* 36; Gov't Reply16. But that shorthand captured the district court's concern that it could lose jurisdiction if class members were "sent to Salvadoran or Honduran prisons." Tr. Of Mr. 15 Hr'g 35. Far from doubting its jurisdiction over government conduct outside U.S. airspace, the court ordered the government to return class members *from abroad*, *see id.* 5, 43, consistent with courts' "regular[]" exercise of judicial review to enjoin "Executive Branch conduct abroad," Order 35–37. Most importantly, this isolated statement happened well before the district court announced it was "prepared to rule" and issued its crystal-order order to return class members and not transfer custody to El Salvador. Tr. of Mar. 15 Hr'g 41, 43. Litigants cannot disobey unambiguous court orders just because they can find a sentence earlier in the transcript where the judge was thinking out loud.

In short, the government has sought to defy judicial authority at every turn. Now, it seeks to further that defiance by asking this Court to assert jurisdiction and prevent the district court from learning what happened. This Court should not allow the government to prevent even an inquiry into its likely contempt—much less through the extraordinary step of interlocutory appellate review of an unappealable order.

## CONCLUSION

The government's appeal should be dismissed for lack of jurisdiction. If the Court does not dismiss, a stay pending appeal is not warranted, and Plaintiffs respectfully request that the Court expedite the appeal.

Respectfully submitted,

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104

Lee Gelernt
    *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar C. Jadwat
Sidra Mahfooz
Hina Shamsi
AMERICAN CIVIL
    LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
lgelernt@aclu.org

11

<div style="display: flex;">

Arthur B. Spitzer
Scott Michelman
Aditi Shah
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF THE DISTRICT
   OF COLUMBIA
529 14th Street, NW, Suite 722
   Washington, D.C. 20045


Dated: April 28, 2025

Somil B. Trivedi
Bradley Girard
Michael Waldman
Sarah Rich
Skye Perryman
Audrey Wiggins
Christine L. Coogle
Pooja A. Boisture
DEMOCRACY FORWARD
P.O. Box 34553
Washington, DC 20043

</div>

12

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of D.C. Cir. R. 27(c) because it contains 2,590 words.

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

/s/ Lee Gelernt
Lee Gelernt
Counsel for *Plaintiffs-Appellees*
Date: April 28, 2025

## CERTIFICATE OF SERVICE

On April 28, 2025, I served one copy of the Reply in Support of Plaintiffs-Appellees' Motion to Dismiss upon Defendants-Appellants' counsel via this Court's electronic-filing system.

<div style="text-align: right;">

/s/ Lee Gelernt
Lee Gelernt
Counsel for *Plaintiffs-Appellees*
Date: April 28, 2025

</div>