[ORAL ARGUMENT NOT YET SCHEDULED]

No. 25-5124

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

J.G.G., *et al.*,

*Plaintiffs–Appellees*,

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, *et al.*,

*Defendants–Appellants*.

_____

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00766
The Hon. James E. Boasberg

## MOTION TO SUPPLEMENT THE RECORD ON APPEAL OR ALTERNATIVELY REMAND FOR FURTHER FACT FINDING

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104

Lee Gelernt
  *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar Jadwat
Hina Shamsi
AMERICAN CIVIL LIBERTIES
  UNION FOUNDATION
125 Broad Street, 18th Floor

(415) 343-0770

Arthur B. Spitzer
Scott Michelman
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF
   THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500

*Barred in Texas and Arizona only;
supervised by a member of the D.C. Bar

New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
   FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Phone: (202) 448-9090
Fax: (202) 796-4426

*Counsel for Plaintiffs–Appellees*

# INTRODUCTION

Plaintiffs–Appellees ("Plaintiffs") continue to press their argument that the appeal should be dismissed because this Court lacks jurisdiction. *See* Pls.' Mot. to Dismiss Appeal & Response in Opp. to Emergency Mot. for a Stay Pending Appeal at 12–23.

If this Court does not dismiss the appeal, Plaintiffs respectfully move to supplement the record on appeal. *See* Section I. Alternatively, Plaintiffs request that the Court remand the case to the district court to allow it to supplement the record and engage in any appropriate additional fact finding. *See* Section II.

## I. SUPPLEMENTATION OF THE RECORD ON APPEAL IS IN THE INTERESTS OF JUSTICE.

Plaintiffs seek to supplement the record on appeal with the attached documents containing text messages and emails disclosed by whistleblower Erez Reuveni, former Acting Deputy Director for the Department of Justice (DOJ) Office of Immigration Litigation (OIL). Exs. A, B.[1] Plaintiffs previously filed Mr.

---

[1] Plaintiffs have provided excerpted documents related to this matter from the July 1, 2025 Addendum to the June 24, 2025 Protected Whistleblower Disclosure of Mr. Erez Reuveni Submitted Pursuant to 5 U.S.C. § 2302 and 5 U.S.C. § 1213, *see* Ex. A, and the July 7, 2025 Addendum to the June 24, 2025 Protected Whistleblower Disclosure of Mr. Erez Reuveni Submitted Pursuant to 5 U.S.C. § 2302 and 5 U.S.C. § 1213, *see* Ex. B. Plaintiffs have excluded documents Mr. Reuveni provided in these addenda that are primarily related to other litigation. Citations to page numbers are citations to the page numbers in the original documents.

1

Reuveni's initial whistleblower disclosure pursuant to Federal Rule of Appellate Procedure 28(j).[2]

Supplementation of the record here is in the interests of justice. *Colbert v. Potter*, 471 F.3d 158, 165–66 (D.C. Cir. 2006). As described below, the emails, text messages, and telephone log disclosed by Mr. Reuveni provide significant further support for the facts recounted in Mr. Reuveni's whistleblower disclosure and for the district court's finding that "probable cause exists to find the Government in criminal contempt" because "the Government's actions on that day demonstrate a willful disregard for" the district court's March 15 temporary restraining order. Dist. Ct. Dkt. 81 at 1. Among other things, an email thread including nine DOJ email addresses titled "AEA Litigation Team – case updates" shows DOJ attorneys' clear contemporaneous understanding that the injunction prevented their clients from deplaning individuals subject to the Alien Enemies Act ("AEA").[3]

---

[2] If the Court believes that supplementation of the record is preferable to considering Mr. Reuveni's initial whistleblower disclosure pursuant to Fed. R. App. P. 28(j), Plaintiffs respectfully request that the Court also supplement the record with the initial whistleblower disclosure for the reasons stated in this motion.

[3] The government's response to Plaintiffs' prior submission of the whistleblower complaint stated that "[i]t is a set of allegations . . . that the Government forcefully denies," Doc. 2122523 (filed June 26, 2025) at 2, yet the government has, thus far, successfully blocked the district court's efforts to find underlying facts that provide corroboration for the allegations—such as the corroborating facts in these documents.

### A. Email Thread Showing DOJ Attorneys' Clear Contemporaneous Understanding that the TRO Barred the Government from Deplaning Individuals Subject to the AEA

The new disclosures provide a series of emails in a thread titled "AEA Litigation Team – case updates" sent on March 15 and March 16, 2025, apparently among Mr. Reuveni, eight other @usdoj.gov email addresses, five @ice.dhs.gov addresses, seven @state.gov addresses, and three @hq.dhs.gov addresses. Ex. A-3 at 9–13; Ex. A-4 at 14–22; Ex. A-5 at 23–25.[4] The thread demonstrates that DOJ attorneys clearly understood the injunction to prevent "deplan[ing]" any individual "subject to an AEA removal" and to require "return[ing] those individuals to the United States." Ex. A-5 at 24; *see also* Ex. A-4 at 15 ("Please confirm asap no one lacking a title 8 final order will be taken off these planes when they land. We need to address this asap to avoid contempt."). That interpretation was consistently expressed by Mr. Reuveni from Saturday, March 15, at 6:48 PM, to Sunday, March 16, at 8:07 AM, as detailed below.

The email thread shows that Mr. Reuveni, the then-Acting Deputy Director for DOJ OIL and a member of the AEA litigation team, inquired six times between

---

[4] The thread is splintered into multiple parts and therefore appears in three separate exhibits. Some of the emails do not include the "@agency.gov" ending to the email addresses but instead have fully redacted addresses. However, the emails consistently include either twenty-three or twenty-four email addresses (with one @ice.dhs.gov email address sometimes omitted), the subject line is consistent, and the emails appear to all be REPLY-ALLs to the same thread. Ex. A-3 at 9–13; Ex. A-4 at 14–22; Ex. A-5 at 23–25.

3

Saturday, March 15, at 6:44 PM and Sunday, March 16, at 8:07 AM about the status of individuals subject to the AEA who were on flights that were in the air during the TRO hearing. Ex. A-4 at 19 (Mar. 15, 6:44 PM); Ex. A-4 at 18 (Mar. 15, 6:46 PM); Ex. A-4 at 15 (Mar. 15, 6:53 PM); Ex. A-3 at 10 (Mar. 15, 7:04 PM); Ex. A-4 at 15 (Mar. 15, 7:18 PM); Ex. A-5 at 24 (Mar. 16, 8:07 AM).

The final email on the thread indicates that Mr. Reuveni did not receive a response to this inquiry for over 13 hours, because Mr. Reuveni repeats the same question. Ex. A-5 at 24. There is no indication in the emails that anyone on the thread ever directly responded to Mr. Reuveni's requests for information about the status of individuals on the departed flights, other than to note at 6:50 PM that the flights were in the air. The thread includes:

- An email from Mr. Reuveni to eight other @usdoj.gov email addresses, four @ice.dhs.gov addresses, seven @state.gov addresses, and three @hq.dhs.gov addresses sent Saturday, March 15, at 6:44 PM under "high" importance. The email states: "The judge is presently issuing a class-wide TRO. Can folks confirm for us if at the moment any individuals subject to the AEA are being staged for removal, or are presently in the air as part of removal (but not yet having landed and disembarked)?" Ex. A-4 at 18–19. This email indicates a contemporaneous understanding from Mr. Reuveni, the then-Acting Deputy Director for DOJ OIL, that whether individuals were "presently in the air as

4

- part of removal but" had "not yet . . . landed and disembarked" was relevant to TRO compliance.

- An email from Mr. Reuveni to what appear to be the same individuals, sent Saturday, March 15, at 6:46 PM: "The class is 'all noncitizens in US custody subject to the AEA' a minute order with more specifics will issue. Please confirm receipt of this email and let us know ASAP on the questions below concerning removals not yet effectuated, including those involving folks in the air." Ex. A-4 at 18. This email shows that Mr. Reuveni viewed "folks in the air"—that is, from the 6:44 PM email, individuals who had "not yet . . . landed and disembarked"—as "removals not yet effectuated."

- An email from Mr. Reuveni to what appear to be the same individuals, in a reply with the same subject line, sent Saturday, March 15, at 6:48 PM: "Sorry for all the emails. Last email: the judge specifically ordered us to not remove anyone in the class, and to return anyone in the air." Ex. A-4 at 17–18.

- An email from an @ice.dhs.gov address to what appear to be the same individuals, sent Saturday, March 15, at 6:50 PM: "Two flights departed at about 5:15 and 5:45. They are still in the air." Ex. A-4 at 16–17.

- An email from a redacted email address to what appear to be the same individuals, sent Saturday, March 15, at 6:53 PM: "Just confirmed on the ground that the Title 50 folks [individuals subject to the AEA] on the third

5

flight are being pulled off." Ex. A-4 at 15–16. This email appears to be referring to individuals subject to the AEA who were already loaded onto the third flight, which had not yet left, being taken off the airplane in the United States before departure due to the Court's order.

- An email from Mr. Reuveni to what appears to be the same email thread, sent Saturday, March 15, at 6:53 PM: "Thanks. And the two flights in the air?" Ex. A-4 at 15.

- An email from Mr. Reuveni to what appear to be the same individuals, sent Saturday, March 15, at 7:04 PM: "As we await the written order, clarifying our understanding of the injunction as clarified at the end. No one subject to AEA in our custody can be removed. And anyone in the air should be returned, unless they have a title 8 final order. Please confirm receipt and let us know what if anything is happening." Ex. A-3 at 10.

- An email from Mr. Reuveni to what appears to be the same email thread, sent Saturday, March 15, at 7:18 PM: "All plaintiffs have reached out about the flights. Please confirm asap no one lacking a title 8 final order will be taken off these planes when they land. We need to address this asap to avoid contempt. It in particular [sic] the flight landing in three minutes. Please advise." Mr. Reuveni then listed the following information: "GXA flight 6143 does not appear to land until 7:20 pm eastern.; GXA flight 6145 has about at

6

least another hour in flight.; GXA flight 6122 has not yet left Harlingen." Ex. A-4 at 15.

- An email from Mr. Reuveni to what appear to be the same individuals, sent Saturday, March 15, at 7:27 PM, states "Here is the minute order" and copy-pastes the minute order's text. Ex. A-4 at 15.

- An email from Mr. Reuveni to what appear to be the same individuals, sent Sunday, March 16, at 8:07 AM, marked high importance, states in relevant part: "[F]ollowing up on several different emails including the below and merging into one place. Can we please get an update on the status of compliance with the injunction, consistent with the earlier emails and guidance from us below? Specifically, can you confirm the status of the three flights referenced below, and the status of the individuals that are on each of the flights? As a reminder our advice here on injunction compliance was to not deplane anyone from these planes who is subject to an AEA removal, although it was permissible to deplane individuals with Title 8 orders, and otherwise return those individuals to the United States. We need to confirm quickly status so we can update the court if necessary. Relatedly, to the extent conversations on these issues are occurring at a higher level within your leadership and ours, can you please confirm that?" Ex. A-5 at 24.

7

The emails do not contain any disagreement or questioning from any other government official as to the interpretation of the injunction to prevent deplaning or as to the relevance of inquiries about whether individuals on the flights had been deplaned. One of the email addresses on the thread was for August Flentje, then-Acting Director for OIL and Mr. Reuveni's direct supervisor. *See, e.g.*, Ex. A-3 at 10.

      The district court found significant that "although Defendants now seek to muddy the waters, at no point on Saturday evening . . . did the Government so much as hint that it was not 'clear . . . precisely what action [was] proscribed.' . . . Only now does the Government suggest that the Court ordered something less than what it unequivocally stated in the hearing." Dist. Ct. Dkt. 81 at 42–43 (citation omitted). The district court particularly noted as "telling" that "the Government never contacted the Court with any questions about the injunctions' scope" despite "ha[ving] been in regular email contact with chambers throughout the day." *Id.* at 42. Similarly, it is telling that on a litigation thread titled "AEA Litigation Team – case updates," for more than 13 hours the OIL Acting Deputy Director consistently stated that the injunction prevented deplaning, requested status updates on the individuals on the flights, and apparently received no response.

### B. Additional Relevant Disclosures

Additional emails, text messages, and a phone log disclosed by Mr. Reuveni are relevant to discussions between Judge Boasberg and DOJ counsel about what counsel knew about the AEA flights and who made the decision not to return the detainees. Ex. A-1 at 1–2; Ex. A-2 at 3–8; Ex. A-6 at 26–27; Ex. A-7 at 27–28; Ex. A-11 at 80–81; Ex. B-1 at 1–4.

***

In sum, the emails and text messages disclosed by Mr. Reuveni are significant newly discovered information that provides further support for the district court's finding of probable cause, and supplementation of the record on appeal is therefore in the interests of justice.

## II. ALTERNATIVELY, REMAND TO THE DISTRICT COURT IS WARRANTED.

Alternatively, remand to the district court for supplementation of the factual record and further fact finding is warranted. *Cf. Colbert*, 471 F.3d at 165–66. As detailed above, the newly disclosed documents shed significant light on the events at issue here. Fairness and judicial efficiency are served by making them part of the record.

## CONCLUSION

The Court should dismiss the appeal for lack of jurisdiction. If it does not do so, it should supplement the record with Plaintiffs' Exhibits or, alternatively, remand for supplementation of the factual record in the district court.

Date: July 17, 2025

Respectfully submitted,

/s/ *Lee Gelernt*

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770

Arthur B. Spitzer
Scott Michelman
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF
   THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500

Lee Gelernt
   *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar Jadwat
Hina Shamsi
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
   FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Phone: (202) 448-9090
Fax: (202) 796-4426

*Barred in Texas and Arizona only;
supervised by a member of the D.C. Bar

*Counsel for Plaintiffs–Appellees*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 2,262 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

/s/ *Lee Gelernt*
Lee Gelernt
July 17, 2025
*Counsel for Plaintiffs–Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2025, I electronically filed the foregoing Motion with the Clerk for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

<u>/s/ *Lee Gelernt*</u>
Lee Gelernt
July 17, 2025
*Counsel for Plaintiffs–Appellees*