# EXHIBIT B

# July 7, 2025 Addendum to June 24, 2025 Protected Whistleblower Disclosure of Mr. Erez Reuveni Submitted Pursuant to 5 U.S.C. § 2302 and 5 U.S.C. § 1213

| EXHIBIT NUMBER | DESCRIPTION | PAGE NUMBER |
|---|---|---|
| 1 | March 15, 2025 Excerpts of Text Messages Between Mr. Reuveni and a Colleague During and After the Hearing before Judge Boasberg in *JGG v. Trump*<br><br>*These messages are corroboration of Bove's comments in a meeting the day prior that planes with individuals removed under the Alien Enemies Act (AEA) would depart the U.S. over the weekend of March 15-16, 2025, and that the DOJ might have to say "fuck you" to a federal court were a court to order the planes not to depart.* | Pages 1-4 |
| 2 | March 28, 2025 email between OIL litigation team<br><br>*This email message evidences that DHS was communicating to DOJ-OIL that they had received contrary advice regarding how to interpret the scope of the court's injunction in DVD as to whether it applied only to named plaintiffs* | Pages 5-6 |
| 3 | March 28, 2025 email between OIL and DHS regarding *DVD v. DHS*<br><br>*Emails evidence that Mr. Reuveni was asking for confirmation of government's position on the scope of the injunction in* DVD v. DHS *the night of March 28, 2025, and did not receive a response. This lack of response led Mr. Reuveni to decide not to file a brief with the government's position, which led to calls in the early hours of March 29, 2025 from Perkins, McHenry, Percival, and Whitaker.* | Pages 7-8 |
| 4 | March 28-29, 2025 emails between OIL and DHS following email from Plaintiffs' attorneys in *DVD v. DHS* | Pages 9-19 |

*This email exchange evidences the sequence of events wherein Mr. Reuveni determined that he could not file a brief in* DVD v. DHS *because there was not confirmation that DHS and DOJ leadership agreed that the injunction had nationwide applicability.*

Pp.18-19: Mr. Reuveni states, "Hi everyone. WE understand guidance hasn't been issued yet. Can DHS confirm asap whether anyone who would be subject to the injunction as read by us in our papers and in our advice to you earlier today— that is that it bars removal of anyone with a final order other than someone with a 235b order—is not presently being staged for removal. WE are telling the court in our briefs the injunction applies to such people and that is the reason for the need for relief. If DHS removes such people nonetheless we'd be violating the court order as we read it earlier, but also as we are presenting it in our briefs. Can folks please confirm ASAP that no one subject to the order is currently being staged for removal?"

P. 17: Flentje responds, "I agree with this. If we file this brief, the United States' interpretation of the injunction is that it is universal in scope. If a decision is being considered to take a different interpretation of the order, we should not file this brief, and we would need to withdraw the brief if it has been filed."

P. 15: Percival notes, "My take on these emails is that DOJ leadership and DOJ litigators don't agree on the strategy. Please keep DHS out of it," and pp. 13-14 follows with, "Figure out what DOJ's position is and get back to us. DHS has one position from the top of the agency to the bottom. DOJ needs to do the same."

P. 13: When Mr. Reuveni asks Percival, "What is that position?" Percival responds p.

| | | |
|---|---|---|
| | 12 with, "Ask your leadership. Holy crap guys."

Pp. 12-13: Mr. Reuveni then notes, "Ok. We can't file the briefs then. We'll hold on that until we have some clarity on this. The briefs explicitly say we view the injunction as barring all removals. If planes are taking off or will take off with people covered by the injunction as these briefs say we cannot file the briefs as written. If our view is that the order applies only to the named plaintiffs there is no emergency that justifies these filings. The solicitor general signed off on the former approach. But if we can't get confirmation that that is how everyone reads the order then we can't file this as drafted. Standing by for guidance in the mean time."

An hour later, after Mr. Reuveni had phone calls with McHenry, Perkins, Percival and Whitaker, Percival replied p. 10 saying, "Thanks for the phone call Erez. I think we have a path forward. Have a good night everyone." | |
| 5 | March 29, 2025 emails between OIL attorneys regarding *DVD v. DHS*

*This email exchange demonstrates that as Mr. Reuveni alleged in his disclosure, he was not receiving responses from those in his chain of command, including Flentje, Ensign, and Roth, on the evening of March 29, 2025. It also illustrates Mr. Reuveni's reasonable belief that the argument made in McHenry's "odd" footnote that the court's order was ambiguous, was unreasonable.*

P. 21: an email from an OIL attorney noted that a reviewer from the white house added a comment in the draft brief, "Not sure I understand the final point in the FN about this making the scope of the order ambiguous. Consider clarifying." | Pages 20-22 |

3

| 6 | March 29, 2025 text messages between Mr. Reuveni and Mr. Flentje

*This email exchange evidences that Flentje was unavailable in the early hours of March 29 when Mr. Reuveni decided he could not file the DVD appeal brief because DHS did not agree that the injunction applied nationwide. The exchange also evidences that DHS was delaying in disseminating written guidance to the agency about the applicability of the injunction at the behest of DOJ leadership.*

P. 24: Flentje says, "The DVD thing is nuts." | Pages 23-25 |
|---|---|---|
| 7 | March 29, 2025 emails between OIL and DHS regarding *DVD v. DHS* guidance

*Email message confirms that as Mr. Reuveni disclosed, DHS did not disseminate written guidance to the agency about the Court's order in* DVD v. DHS *and instead only provided verbal guidance to one officer.* | Pages 26-29 |
| 8 | March 31, 2025 email between OIL attorneys following email from Plaintiffs' attorneys in *DVD v. DHS*

*In this email exchange Mr. Reuveni notes that he has raised up his chain of command the removal of 17 individuals to El Salvador, including a named plaintiff in* DVD v. DHS *in apparent violation of the injunction.* | Pages 30-32 |
| 9 | March 31, 2025 emails between OIL and DHS following email from Plaintiffs' attorneys in *DVD v. DHS*

*In this email exchange Mr. Reuveni challenges DHS GC Mazzara's assertion that, "DHS had nothing to do with this operation as far as I'm aware," regarding Secretary Rubio's announcement that on the night of March 30, 2025, 17 people were removed to El Salvador by noting that the* | Pages 33-35 |

| | | |
|---|---|---|
| | *individuals were in DHS custody prior to their transfer to El Salvador, and that DOD referred OIL back to DHS for further information.*<br><br>Pp. 34-35: Mazzara states, "These are not questions for DHS. DHS had nothing to do with this operation as far as I'm aware. DoD is not a party to this suit, nor is State I believe, and so these questions need to go to them."<br><br>P. 34: Mazzara then says, "And for the record, do not make any representations to the court regarding DHS on the matter of this reported flight."<br><br>P. 34: Mr. Reuveni asks, "These folks were in DHS custody at GTMO were they not? And they were moved from ICE custody in Texas to GTMO, were they not? We will certainly confer with our DOD colleagues (who have initially referred us back to DHS give the points I just mentioned), but parts of this appear to be in DHS's wheelhouse. If a phone call rather than an email with the right group can help clarify, happy to jump on a call." | |
| 10 | April 1, 2025 emails between OIL attorneys regarding *DVD v. DHS*<br><br>*This email exchange evidences that while news reports indicated that* DVD *class members were being removed from the U.S. in violation of the injunction, DHS was not providing DOJ-OIL with responses regarding its compliance with the court's order.* | Pages 36-38 |
| 11 | April 2, 2025 email from OIL colleague regarding *DVD v. DHS*<br><br>*This email evidences that as of April 2, 2025 DHS had not distributed guidance about the* DVD v. DHS *injunction which was resulting in violations of the court order for which the ACLU was threatening to bring suit.* | Pages 39-40 |

| 12 | April 2, 2025 emails between OIL attorneys regarding *DVD v. DHS*<br><br>*This email exchange evidences that DHS was not being responsive to DOJ-OIL inquiries about compliance with the nationwide injunction in* DVD v. DHS *and that DHS had still not confirmed with DOJ that the agency had issued guidance about the applicability of the court's order to DHS' components.* | Pages 41-43 |

Exhibit 1

# Excerpts of Text Messages Between Mr. Reuveni and a Colleague on March 15, 2025 During and After the Hearing before Judge Boasberg in *JGG v. Trump*

Time: March 15, 2025 5:17-5:25 p.m. ET

These messages corroborate, first at 5:17, the statement on p.7 of Mr. Reuveni's June 24, 2025 disclosure that, "Bove stated that DOJ would need to consider telling the courts 'fuck you' and ignore any such court order," and second at 5:24-5:25, the statement on p. 9 that, "Mr. Reuveni reasonably believes Ensign's statement to the court that he did not know whether AEA removals would take place 'in the next 24 or 28 hours' was false."

| | |
|---|---|
| Oh shit | 5:17 PM |
| That was juts not true | 5:17 PM |
| Edited to "That was just not true " | 5:17 PM |
| About to enter the find out phase follow fuck around | 5:24 PM |
| Edited to "About to enter the find out phase following fuck around " | 5:24 PM |
| I can't believe he said he doesn't know | 5:24 PM |
| He got my email | 5:24 PM |
| I mean he doesn't know for sure they're aea | 5:24 PM |
| About what what? | 5:24 PM |
| He knows they are being removed | 5:24 PM |
| About the flights | 5:24 PM |
| The email from aclu | 5:25 PM |
| He knows there are plans for AEA removals within the next 24 hours | 5:25 PM |
| Yes he does | 5:25 PM |

2

Time: March 15, 2025 5:55-6:02 p.m. ET

These messages at 5:55 corroborate the statement on p.7 of Mr. Reuveni's June 24, 2025 disclosure that, "Bove stated that DOJ would need to consider telling the courts 'fuck you' and ignore any such court order." The messages at 6:01 reflect the paragraph on p. 10 about the reconvened hearing in *JGG v. Trump* before Judge Boasberg at 6:00 pm.



Time: March 15, 2025 8:16-8:22 p.m. ET

These messages occurred after a period of non-responsiveness from Mr. Reuveni's supervisors described in Mr. Reuveni's June 24, 2025 disclosure, beginning at the last paragraph of p. 10 through the end of the first paragraph on p. 12, and also after Mr. Reuveni reviewed public information that two flights had landed in Honduras by 8:10 pm. The messages corroborate the statement on p.7 of Mr. Reuveni's June 24, 2025 disclosure that, "Bove stated that DOJ would need to consider telling the courts 'fuck you' and ignore any such court order."

> Guess we are going to say fuck you to the court — 8:16 PM
>
> Super — 8:16 PM

> Well Pamela Jo Bondi is — 8:22 PM
>
> Not you — 8:22 PM