No. 25-5124

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

J.G.G., *et al.*,

*Plaintiffs–Appellees*,

v.

DONALD J. TRUMP, IN HIS OFFICIAL CAPACITY AS
PRESIDENT OF THE UNITED STATES, *et al.*,

*Defendants–Appellants.*

On Appeal from the United States District Court
for the District of Columbia
No. 1:25-cv-00766
The Hon. James E. Boasberg

## PLAINTIFFS-APPELLEES' PETITION FOR REHEARING EN BANC

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770

Lee Gelernt
    *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar Jadwat
Hina Shamsi
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660

Arthur B. Spitzer
Scott Michelman
Aditi Shah
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION OF
    THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500

*Barred in Texas and Arizona only;
supervised by a member of the D.C. Bar

lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
    FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Phone: (202) 448-9090
Fax: (202) 796-4426

*Counsel for Plaintiffs–Appellees*

# TABLE OF CONTENTS

INTRODUCTION AND RULE 40(b)(2) STATEMENT ..........................................1

BACKGROUND ...........................................................................................3

REASONS FOR GRANTING REHEARING EN BANC .......................................8

  I. THE PANEL'S RULING CONFLICTS WITH THIS CIRCUIT'S
    MANDAMUS CASELAW..................................................................8

  II. THE CASE RAISES ISSUES OF EXCEPTIONAL IMPORTANCE ABOUT
     A FEDERAL COURT'S POWER TO ENFORCE ITS ORDERS..................10

    A.  The District Court's Order Was Objectively and Subjectively Clear.....11

    B.  The Purge Option Was Lawful But Has Been Overtaken By Events. ...14

  III. CHANGED CIRCUMSTANCES WARRANT FURTHER
      CONSIDERATION IN THE DISTRICT COURT. .......................................15

CONCLUSION ...........................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*A.A.R.P. v. Trump*,
   145 S. Ct. 1364 (2025)................................................................5, 6

*In re Al Baluchi*,
   952 F.3d 363 (D.C. Cir. 2020)..........................................2, 8, 9

*In re al-Nashiri*,
   791 F.3d 71 (D.C. Cir. 2015)................................................2, 8

*Banks v. Off. of Senate Sergeant-At-Arms*,
   471 F.3d 1341 (D.C. Cir. 2006) ...........................................9

*BlackRock Fin. Mgmt.v. Segregated Acct. of Ambac Assur. Corp.*,
   673 F.3d 169 (2d. Cir. 2012) ..............................................16

*Cheney v. U.S. Dist. Ct.*,
   542 U.S. 367 (2004)............................................................10

*In re Cheney*,
   544 F.3d 311 (D.C. Cir. 2008) .............................................8

*Garb v. Republic of Poland*,
   72 F. App'x 850 (2d Cir. 2003) .........................................16

*GATX/Airlog Co. v. U.S. Dist. Ct.*,
   192 F.3d 1304 (9th Cir. 1999) ...........................................15

*In re Gen. Motors Corp.*,
   No. 94-2435, 1995 WL 940063 (4th Cir. Feb. 17, 1995)...................15

*In re Holloway*,
   995 F.2d 1080 (D.C. Cir. 1993)...................................12, 13

*Illinois v. Ferriero*,
   60 F.4th 704 (D.C. Cir. 2023)..............................................8

*J.G.G. v. Trump*,
No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025)...................................3

*In re LeFande*,
919 F.3d 554 (D.C. Cir. 2019)................................................................12

*In re Levine*,
27 F.3d 594 (D.C. Cir. 1994)..................................................................12

*In re Mohsen*,
243 F.3d 553, 2000 WL 1062085 (Fed. Cir. July 20, 2000) ...............15

*NetCoalition v. S.E.C.*,
715 F.3d 342 (D.C. Cir. 2013)..................................................................8

*Nken v. Holder*,
556 U.S. 418 (2009)..................................................................................11

*Piemonte v. United States*,
367 U.S. 556 (1961)..................................................................................14

*In re QLT Phototherapeutic*,
25 F. App'x 825 (Fed. Cir. 2001) ............................................................15

*Republic of Venezuela v. Philip Morris*,
287 F.3d 192 (D.C. Cir. 2002)..................................................................9

*Schlagenhauf v. Holder*,
379 U.S. 104 (1964)..................................................................................9

*United States v. Fokker Services B.V.*,
818 F.3d 733 (D.C. Cir. 2016)..................................................................9

*United States v. Fuller*,
332 F.3d 60 (2d Cir. 2003) ......................................................................16

*United States v. Young*,
107 F.3d 903 (D.C. Cir. 1997)................................................................13

**Statutes**

28 U.S.C. § 2106................................................................................16

50 U.S.C. § 21 ...................................................................................12

**Other Authorities**

Fed. R. App. P. 28(j) ...........................................................................7

Fed. R. App. P. 40 ...............................................................................1

## INTRODUCTION AND RULE 40(b)(2) STATEMENT

Plaintiffs respectfully seek en banc review of the panel's splintered ruling vacating the district court's preliminary finding of probable cause of criminal contempt. Fed. R. App. P. 40.

On the evening of March 15, Chief Judge Boasberg issued a Temporary Restraining Order ("TRO") prohibiting the government from removing Plaintiffs (including the members of a provisionally certified class) to El Salvador under the Alien Enemies Act ("AEA") given the complete absence of due process. ECF 20 ("Mar. 15 Tr.") 41-43 (oral TRO);[1] D.D.C. Mar. 15, 2025 Minute Order (written memorialization of TRO). Defendants removed the class members anyway. After weeks of unsuccessfully seeking information about the events of March 15 from Defendants, the district court ordered Defendants either to disclose the names of the government officials involved in the decision to remove Plaintiffs despite the TRO or, as an optional alternative, to "purge" the possible contempt by presenting a plan to allow Plaintiffs to pursue their habeas claims. ECF 80 ("Order"), 81 ("D.D.C. Op."). The court noted that while a possible criminal referral to the Justice Department or a special prosecutor might at some point be warranted, it was not taking that step at this preliminary stage. D.D.C. Op. 44.

---

[1] District court docket citations ("ECF") are to *J.G.G. v. Trump*, No. 25-cv-766 (D.D.C.). All court document citations are to the ECF page number.

The panel unanimously held that appellate jurisdiction was lacking but, in a *per curiam* ruling, vacated the district court's order via mandamus. Op. 2-4. Judge Katsas, writing only for himself, found the district court's TRO ambiguous and would have terminated the criminal contempt inquiry altogether. *Id.* at 6-7 (Katsas, J.). Judge Rao, also writing only for herself, took a different approach, concluding that only the district court's purge option was unlawful but nevertheless that the entire order should be vacated. *Id.* at 40-41, 45-46 (Rao, J.). While disagreeing with Judge Katsas that the contempt inquiry should be terminated altogether, she nonetheless warned that Chief Judge Boasberg "will have to squarely face the difficult questions that would arise from" "the problematic and uncertain path of criminal contempt." *Id.* at 58-59. Judge Pillard dissented, finding that the majority's mandamus ruling was inconsistent with this Court's jurisprudence; that the district court's order not to remove the class members was crystal clear; that the purge option was lawful; and that, were it not, the proper remedy would have been to excise only that portion of the district court's order and allow Chief Judge Boasberg to continue his careful fact-finding inquiry. *Id.* at 61-68 (Pillard, J.).

Review by the full Court is warranted because the ruling creates an intra-Circuit conflict over the proper standard for mandamus relief. *See*, *e.g.*, *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020); *In re al-Nashiri*, 791 F.3d 71, 82 (D.C.

Cir. 2015). More fundamentally, the ruling raises an issue of overriding importance going to the heart of the Judiciary's authority to enforce its orders.

It is hard to imagine a more direct blow to the authority of the federal courts than undermining their ability to enforce their orders. Here, the panel's ruling is even more dangerous because it undermines the district court's authority even to *inquire* into possible willful disobedience of its order—a step well short of pursuing any particular remedy, much less a criminal referral.

## BACKGROUND

On March 15, the Administration prepared hundreds of detained Venezuelans alleged to be part of the Tren de Aragua ("TdA") criminal gang for removal to El Salvador under the AEA, a 1798 wartime measure that has been used only three times in our nation's history. *J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, *16-17 (D.C. Cir. Mar. 26, 2025) (Millett, J., concurring). None was given any opportunity to contest their alleged gang membership or their removability under the AEA. The district court held an emergency hearing the same day, provisionally certified a class of all noncitizens in custody subject to removal solely under the AEA, and issued an oral TRO directing that "any plane containing these folks that is going to take off or is in the air needs to be returned to the United States." Mar. 15 Tr. 43:12-14. The district court instructed the government attorney to communicate

this order to his clients "immediately." *Id.* at 43:19. Roughly thirty minutes later, the district court memorialized its ruling in a written minute order, stating that, "[a]s discussed in today's hearing," the government was barred from "removing members of such class" under the AEA. D.D.C. Mar. 15 Minute Order.

Two planes carrying Plaintiffs took off during the TRO hearing and were in flight when the district court issued its oral and written rulings. D.D.C. Op. 6-9. Nonetheless, Defendants landed the planes in Honduras and, after a layover of several hours, flew them to El Salvador and handed over Plaintiffs to El Salvador, where they spent months in the notorious CECOT prison. While at CECOT, Plaintiffs were held incommunicado and subjected to daily beatings and inhumane conditions. *See, e.g.*, *J.O.P. v. DHS*, No. 8:19-cv-1944, ECF 382 & Exs. (Aug. 15, 2025).

Significant evidence has emerged since the hearing that the vast majority of class members plainly were neither criminals nor part of TdA, and that the government's gang allegations were largely based on criteria that experts say have little connection to TdA. *See, e.g.*, ECF 67-3 ¶¶ 22-24 (expert explaining that tattoos and hand gestures are unreliable ways to identify TdA members); ECF 67-4 ¶ 14; ECF 67-12 ¶ 25. Yet as the district court subsequently found—without dispute from the government—Plaintiffs were given *no* opportunity to contest their alleged TdA

4

membership before being rushed onto planes on March 15, which took off *during* the TRO hearing as the district court was determining whether to enjoin removals of the proposed class, as it had earlier that day for the named plaintiffs. ECF 148 at 3-8; *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025) (holding that even 24-hour notice for individuals to contest their removal under the AEA "surely does not pass muster").

While Plaintiffs remained incarcerated at CECOT, the district court began investigating the events of March 15 and ultimately issued its probable cause determination, after repeated "obstructionism" and "stonewalling" by Defendants. D.D.C. Op. 10-13, 46. On April 16, the court issued an opinion finding probable cause that Defendants committed criminal contempt, recognizing that a probable-cause inquiry "does not appear to be strictly necessary" but finding it "prudent." *Id.* at 16-17. The court ordered that Defendants either file "declaration(s) identifying the individual(s) who . . . made the decision not to halt the transfer of class members out of U.S. custody" or, if they opted to purge the contempt, file a "declaration explaining the steps they have taken and will take to do so." Order. Defendants appealed, the panel granted an administrative stay on April 18, and on August 8 it issued its mandamus ruling.

During the four months between the district court's probable cause ruling and the panel's mandamus ruling, several events occurred. First, Plaintiffs filed an amended complaint and preliminary injunction motion challenging their removal and ongoing imprisonment at CECOT. Chief Judge Boasberg ruled that Plaintiffs' removal violated due process in light of the Supreme Court's *A.A.R.P.* decision and ordered the government to present a plan to "facilitate" a means for Plaintiffs to seek habeas review. ECF 148 at 67, 69. That portion of the case has returned to the district court following remand by a separate panel of this Court in light of intervening events. *J.G.G. v. Trump*, No. 25-5217, Doc. 2129267 (D.C. Cir. Aug. 8, 2025) (*per curiam* order).

Second, after the district court's probable-cause ruling, significant whistleblower evidence emerged that leaves little doubt that the DOJ lawyers involved in the litigation understood that Chief Judge Boasberg's TRO order barred them from transferring class members to Salvadoran custody, and not simply from removing them from U.S. territory. That evidence, set forth in Plaintiffs' Motion to Supplement (Doc. 2126016) granted by the panel, shows that a high-level career DOJ attorney assigned to the case repeatedly emailed the relevant agencies that the order prevented the government from "deplan[ing]" any individuals "subject to an AEA removal," with no contradiction from the other DOJ employees on the emails

6

(including his supervisor). Mot. to Suppl., Ex. A-5 at 29; *id.*, Exs. A-1, A-3, A-4, A-5, B-1 (voluminous emails and texts from whistleblower disclosure evincing understanding that the order applied regardless of whether the planes were out of U.S. airspace). Notably, this new evidence confirmed what the DOJ lawyer who argued the emergency TRO hearing subsequently acknowledged in open court: that he had indeed "understood" the order that Saturday night and that the Court "meant that to be effective at that time." ECF 51 ("Mar. 21 Tr.") 5-6.

The whistleblower evidence further revealed that a high-ranking official told a team of DOJ lawyers prior to March 15 about the upcoming flights and stated that they might simply have to ignore any court order that got in the way of transferring the Plaintiffs to El Salvador. Doc. 2122314 (Fed. R. App. P. 28(j) Letter), Ex. at 7. Finally, the whistleblower evidence included real-time text messages from DOJ career lawyers listening to the March 15 TRO hearing in which they expressed disbelief that the DOJ lawyer arguing the case was falsely stating to Chief Judge Boasberg that he did not know whether any planes were scheduled to depart "in the next 24 or 48 hours." Mar. 15 Tr. 11:12-20; Mot. to Suppl., Ex. B-1 at 9-10 (lawyer arguing the TRO "knows there are plans for AEA removals in the next 24 hours"); Fed. R. App. P. 28(j) Letter, Ex. at 7 (noting that the lawyer arguing the TRO had been in a meeting in which that had been expressly stated).

## REASONS FOR GRANTING REHEARING EN BANC

## I. THE PANEL'S RULING CONFLICTS WITH THIS CIRCUIT'S MANDAMUS CASELAW.

Mandamus is a "drastic" remedy, available only in "extraordinary situations," and "is hardly ever granted." *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023). Under the "exacting" standard of mandamus, the party seeking the writ must establish that the right to relief is "clear and indisputable," there is "no other adequate means to attain the relief," and "the writ is appropriate under the circumstances." *In re Cheney*, 544 F.3d 311, 312-13 (D.C. Cir. 2008). Defendants did not come close to meeting this high bar.

The Circuit's "clear and indisputable" standard requires the petitioner to identify a case "in which a federal court has held that relief is warranted in a matter involving like issues and comparable circumstances." *In re Al Baluchi*, 952 F.3d at 369; *see also NetCoalition v. S.E.C.*, 715 F.3d 342, 354 (D.C. Cir. 2013) (mandamus requires "precedent" that "binds"); *In re al-Nashiri*, 791 F.3d at 82 (standard not met even with Supreme Court case addressing "close analog"). Here, no on-point precedent makes the right to mandamus clear and indisputable, as two of three panel judges recognized. *See* Op. 83 (Pillard, J.) ("Neither defendants nor Judge Katsas identify any case in which putative ambiguity in the disobeyed court order constituted grounds for a writ of mandamus to abort a contempt inquiry even before

any charging decision has been made."); *see also id.* at 54 (Rao, J.) ("This case is highly unusual, and I have found no other like it."). Indeed, Judges Katsas and Rao did not even agree on the rationale for reversing the district court, much less point to a clear-cut binding precedent.

Citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), Judge Rao contends that no precedent is necessary to grant mandamus. Op. 54. But this Court has declined to read *Schlagenhauf* so "expansively," *Banks v. Off. of Senate Sergeant-At-Arms*, 471 F.3d 1341, 1349 (D.C. Cir. 2006), and has made clear that it "will deny mandamus" whenever a petitioner's argument "is not clearly mandated by statutory authority or caselaw," *Al Baluchi*, 952 F.3d at 369; *see also Republic of Venezuela v. Philip Morris*, 287 F.3d 192, 199 (D.C. Cir. 2002) (petitioners did "not come close" to mandamus standard because they "identif[ied] no precedent of this court or of the Supreme Court" on point). Nor does *United States v. Fokker Services B.V.*, 818 F.3d 733 (D.C. Cir. 2016), relieve Defendants of identifying direct precedent, as Judge Rao contended. *Compare id.* at 750 (identifying "numerous decisions of the Supreme Court and this court"), *with* Op. 54 (Rao, J.).

The absence of clear-cut precedent, or even agreement among the panel, underscores that this case is rife with open legal questions. Op. 62 (Pillard, J.) ("I

am unaware of any prior case in which a court has asserted the clarity on which mandamus depends without a majority agreeing as to what is so clear.").

The panel's ruling also conflicts with this Circuit's requirement that mandamus be employed only where there is no "other adequate means to attain the relief." *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380 (2004). At this preliminary stage, the district court had merely begun an inquiry into the facts. The district court had neither imposed punishment nor "even made a referral . . . for prosecution." Op. 62 (Pillard, J.).

En banc rehearing is warranted to ensure that this Court's use of the drastic remedy of mandamus is uniform. Doing so will prevent litigants from prematurely seeking this Court's review where, as here, appellate jurisdiction is plainly lacking.

## II. THE CASE RAISES ISSUES OF EXCEPTIONAL IMPORTANCE ABOUT A FEDERAL COURT'S POWER TO ENFORCE ITS ORDERS.

Although Judges Katsas and Rao had distinct reasons for believing the district court erred, both opinions had the same throughline: that the district court should not even inquire into the facts as to criminal contempt. If accepted, that view would have dire consequences for the Judiciary's ability to enforce its orders.

Both stressed that a criminal referral would have "extraordinary" and "grave" consequences for inter-branch relations. Op. 5-6, 37-39 (Katsas, J.) (arguing for

termination of the entire case); *id*. at 40-41, 43, 46, 53 (Rao, J.) (not terminating case but admonishing the Chief Judge of the District not to "attempt[] to control the Executive Branch's conduct of foreign affairs" by "[d]angling [a] sword of Damocles" and terming any prosecution "dubious"). But the district court reached no final conclusion about specific referral for prosecution. Even if it ultimately did find specific individuals in contempt, the court could choose remedies short of a criminal referral, including recommending disciplinary proceedings.

In addition, the specific reasons for vacating the district court's order offered by Judges Katsas and Rao were erroneous. The order was not ambiguous and the purge option was not unlawful.

### A. The District Court's Order Was Objectively and Subjectively Clear.

Judge Katsas accepted the government's position that the district court's order could reasonably have meant either that Plaintiffs should not be removed from U.S. "territory" or that Plaintiffs should not be handed over to Salvadoran "custody." Op. 29. But neither Judge Katsas nor Defendants offered any conceivable reason why the district court would have been concerned only with Plaintiffs' removal from U.S. territory, since it would then still have retained jurisdiction to order Defendants to facilitate Plaintiffs' return. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). As Judge Pillard noted, the entire context of the hearing, its urgency, and the relief sought by

Plaintiffs, was to ensure that the district court did not potentially lose jurisdiction if Plaintiffs were released from U.S. *custody* to El Salvador. Op. 86-88, 98.

The government and Judge Katsas suggested that *oral* rulings may be insufficient to bind a party. Emergency Mot. for Stay Pending Appeal or Writ of Mandamus 16-17; Op. 25-26 (Katsas, J.). But that view is contrary to this Circuit's law and the contemporaneous understanding of the DOJ attorney at the hearing. *See, e.g.*, *In re LeFande*, 919 F.3d 554, 562-63 (D.C. Cir. 2019) ("in-person order" sufficient for contempt order); *In re Holloway*, 995 F.2d 1080, 1083-84 (D.C. Cir. 1993) (upholding contempt conviction based on oral commands); *In re Levine*, 27 F.3d 594, 596-97 (D.C. Cir. 1994) (same).

Judge Katsas further stated that even if an oral ruling is binding, Chief Judge Boasberg's written order did not encapsulate every aspect of his oral ruling, implausibly suggesting that in the intervening 30 minutes he had perhaps changed his mind. Op. 23, 26-27. But the written order specifically began by stating, "[a]s discussed at the hearing," leaving no doubt that the oral and written orders were one and the same. D.D.C. Mar. 15 Minute Order. Insofar as Defendants and Judge Katsas suggest that Chief Judge Boasberg was at fault for moving quickly, the blame lies squarely with Defendants. The AEA states that the Act's invocation must be "public," 50 U.S.C. § 21, yet the President signed the Proclamation in secret on

March 14 and did not release it publicly until late in the afternoon of March 15; all the while, Defendants were hurrying Plaintiffs onto planes despite the 5:00 p.m. scheduled hearing to determine the legality of the removals. D.D.C. Op. 3-6.[2]

Judge Katsas also wrongly stated that the extensive whistleblower evidence had "at best limited relevance" because the contempt standard is "objective." Op. 21 n.5 (Katsas, J.). The objective standard "takes into account" the "audience to which it is addressed" and how others "understood" the order's scope. *United States v. Young*, 107 F.3d 903, 907-08 (D.C. Cir. 1997). Here, the audience was sophisticated government officials, who were informed by their counsel in real time that the injunction prevented deplaning individuals subject to the AEA. Mot. to Supp., Ex. A-3 at 15, Ex. A-4 at 20, Ex. A-5 at 29; *see, e.g.*, *In re Holloway*, 995 F.2d at 1084 (rejecting effort "to interject some ambiguity" given record evidence that contemnor "knew what the judge meant"). That career DOJ counsel repeatedly notified the

---

[2] Judge Katsas additionally suggested that the district court was itself unsure about what it wanted because it subsequently retracted the portion of its order requiring that the planes be turned around mid-flight. Op. 20-21. Not so. After defying the order, Defendants argued that it might have been dangerous to turn the planes around because that might have required dangerous maneuvers without sufficient fuel. ECF 56 at 8. Chief Judge Boasberg simply stated that of course he had not expected the pilots to act in ways that were not "logistically and operationally prudent," and that the planes could have landed, refueled, and then brought back Plaintiffs—precisely what DOJ's lawyers recommended in real time. D.D.C. Op. 36-37; *see also id.* at 9 (nine non-Venezuelans returned after El Salvador landing).

relevant agencies of the district court's order, its meaning, and its urgency, yet received no response until the next day, speaks volumes.

Moreover, had Defendants genuinely believed the district court's order was unclear, they could easily have contacted Chief Judge Boasberg, who had made himself available throughout that Saturday on incredibly short notice. That they instead chose to ignore the order and then retroactively manufacture ambiguity is a remarkable step for any litigant, much less the United States Department of Justice. *See Piemonte v. United States*, 367 U.S. 556, 560 (1961) (where "[n]either [contemnor] nor his counsel ever claimed confusion in the District Court," contemnor's later contention that order was ambiguous was "sheer afterthought"). That is especially so where there is evidence not only that DOJ lawyers fully understood the order at the time but that a high-ranking DOJ official had also indicated in advance that DOJ might ignore a court order. *See generally* 28(j) Letter, Ex. at 7 (whistleblower disclosure); *see also* D.D.C. Op. 9 ("boasts by Defendants intimated that they had defied the Court's Order deliberately and gleefully").

## B. The Purge Option Was Lawful But Has Been Overtaken By Events.

As Judge Pillard explained, Judge Rao's opinion was doubly flawed because the district court acted well within its discretion to provide Defendants with an alternative "lenient" option, Op. 45, and because even if the purge option were

impermissible, the proper remedy was to excise only that portion of the order, *id.* at 48. In any event, because an amended complaint seeking to facilitate habeas relief for the removed plaintiffs was filed after the district court issued its order, and because Plaintiffs are no longer detained at CECOT (having been transferred to Venezuela), the purge option should be reassessed by the district court. *See infra* Section III.

## III. CHANGED CIRCUMSTANCES WARRANT FURTHER CONSIDERATION IN THE DISTRICT COURT.

The Court should grant rehearing en banc and vacate the panel opinion. While the Court should deny mandamus relief, it would be appropriate for the Court to vacate the district court's order in its entirety to allow Chief Judge Boasberg to begin anew given the changed circumstances since its initial issuance (including the significant whistleblower evidence, Plaintiffs' transfer from El Salvador to Venezuela, and the filing of an amended complaint through which Plaintiffs are pursuing remedies for the government's due process violations).[3] Alternatively, if

---

[3] Denial of a mandamus petition does not preclude vacatur of a district court's order based on intervening developments. *See, e.g.*, *GATX/Airlog Co. v. U.S. Dist. Ct.*, 192 F.3d 1304, 1308 (9th Cir. 1999) (denying mandamus but vacating district court's order as moot); *In re Mohsen*, 243 F.3d 553 (Table), 2000 WL 1062085, at *2-3 (Fed. Cir. July 20, 2000); *In re Gen. Motors Corp.*, No. 94-2435, 1995 WL 940063, at *1 n.1 (4th Cir. Feb. 17, 1995) (denying mandamus but granting motion for partial vacatur); *see also In re QLT Phototherapeutic*, 25 F. App'x 825, 826-27 (Fed. Cir. 2001) (denying mandamus "except to the extent" that challenged order was vacated in part to allow district court reconsideration in light of relevant caselaw); *Garb v.*

the Court finds mandamus relief warranted in part, it should vacate only the purge option but affirm the order insofar as it seeks the names of the officials involved in the decision to proceed with Plaintiffs' removal on March 15.

Either option will allow the district court to consider in the first instance how to proceed given the changed circumstances. And both alternatives would make clear that a party cannot avoid even having to answer a legitimate inquiry from a federal court about possible deliberate defiance of its order—especially where, as here, there is significant evidence that the DOJ lawyers litigating the case clearly understood the order at the time and that high-ranking officials stated in advance that they might not let a court order stand in their way. Any other result would suggest that the Judiciary will not enforce its orders in the face of determined resistance.

## CONCLUSION

The Court should grant rehearing en banc.

---

*Republic of Poland*, 72 F. App'x 850, 854 (2d Cir. 2003) (given "development in the law of the Circuit since we heard oral argument," denying mandamus while ordering vacatur of underlying discovery order and remand)*, vacated on other grounds*, 542 U.S. 901 (2004).

Additionally, appellate courts have broad authority to vacate orders and provide for remand in cases before them. *See, e.g.*, 28 U.S.C. § 2106; *United States v. Fuller*, 332 F.3d 60, 64-65 (2d Cir. 2003) (dismissing appeal but remanding with instructions to vacate because, "on an appeal over which we lack appellate jurisdiction," a court is not limited to "dismiss[ing] for lack of jurisdiction and tak[ing] no further action"); *BlackRock Fin. Mgmt. v. Segregated Acct. of Ambac Assur. Corp.*, 673 F.3d 169, 179-80 (2d. Cir. 2012) (similar).

Date: August 28, 2025

Respectfully submitted,

/s/ *Lee Gelernt*
Lee Gelernt
   *Counsel of Record*
Daniel Galindo
Ashley Gorski
Patrick Toomey
Omar Jadwat
Hina Shamsi
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org

Brian Netter
Bradley Girard
Christine L. Coogle
DEMOCRACY FORWARD
   FOUNDATION
P.O. Box 34553
Washington, D.C. 20043
Phone: (202) 448-9090
Fax: (202) 796-4426

Evelyn Danforth-Scott
Spencer Amdur
Noelle Smith
Oscar Sarabia Roman
My Khanh Ngo
Cody Wofsy
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770

Arthur B. Spitzer
Scott Michelman
Aditi Shah
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION OF
   THE DISTRICT OF COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800

Kathryn Huddleston*
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION
915 15th Street, NW, 7th Floor
Washington, D.C. 20005
(212) 549-2500

*Barred in Texas and Arizona only;
supervised by a member of the D.C. Bar*

*Counsel for Plaintiffs–Appellees*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 3,897 words.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced and easy-to-read typeface using Microsoft Word in 14-point size font.

/s/ *Lee Gelernt*
Lee Gelernt
August 28, 2025
*Counsel for Plaintiffs–Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 28, 2025, I electronically filed the foregoing Petition for Rehearing En Banc with the Clerk for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. A true and correct copy of this brief has been served via the Court's CM/ECF system on all counsel of record.

/s/ *Lee Gelernt*
Lee Gelernt
August 28, 2025
*Counsel for Plaintiffs–Appellees*