No. 25-5124

―――――――――――――――――――――――――――――――――

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

―――――――――――――――――――――――――――――――――

**J.G.G.,** *et al.***,**

**Plaintiffs-Appellees,**

**v.**

**DONALD J. TRUMP, in his official capacity as President of the
United States,** *et al.***,**

**Defendants-Appellants.**

―――――――――――――――――――――――――――――――――

**On Appeal from the United States District Court
For the District of Columbia
The Honorable Judge James E. Boasberg
No. 1:25-cv-00766**

―――――――――――――――――――――――――――――――――

**DEFENDANTS-APPELLANTS' OPPPOSITION
TO PLAINTIFFS-APPELLEES'
PETITION FOR REHEARING EN BANC**

―――――――――――――――――――――――――――――――――

## TABLE OF CONTENTS

INTRODUCTION............................................................................1

BACKGROUND.............................................................................3

ARGUMENT..................................................................................9

    I.    The order does not conflict with this Court's mandamus
       precedent..................................................................10

    II.   The question of whether a district court has the authority
       to enforce its orders is not presented or contested............13

    III.  There is no other basis for rehearing..............................16

CONCLUSION............................................................................18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases:

*Associated Press v. Budowich,*
2025 WL 2047025 (D.C. Cir. July 22, 2025) ........................................ 9

*Cheney v. U.S. Dist. Ct. for D.C.,*
542 U.S. 367 (2004) ...................................................................... 11

*Dep't of Homeland Sec. v. D.V.D.,*
145 S. Ct. 2627 (2025) .................................................................. 15

*Hull v. Commissioner of Patents,*
2 MacArth. 125 (D.C. 1875)......................................................13

*In re Al Baluchi,*
952 F.3d 363 (D.C. Cir. 2020) ...................................................... 12

*In re Khadr,*
823 F.3d 92 (D.C. Cir. 2016) ........................................................ 12

*J.G.G. v. Trump,*
No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025) ............... 5-6

*J.G.G. v. Trump*
778 F. Supp. 3d 24 (D.D.C. Apr. 16, 2025) ................................. 6, 7, 8

*J.G.G. v. Trump,*
147 F.4th 1044 (D.C. Cir. Aug. 8, 2025) ............................... 3, *passim*

*J.G.G. v. Trump,*
No. 25-5217, 2025 WL 2317650 (D.C. Cir. Aug. 8, 2025) ............ 8, 16

*Jones v. Clinton,*
206 F.3d 811 (8th Cir. 2000) ........................................................ 10

*Lewis v. Becerra,*
2025 WL 37164 (D.C. Cir. Jan. 7, 2025) ..................................... 9-10

*Ramos Colon v. U.S. Att'y for Dist. of Puerto Rico,*
576 F.2d 1 (1st Cir. 1978) .......................................................... 10, 14

*Trump v. J.G.G.*,
    604 U.S. 670 (Apr. 7, 2025) ............................................................... 6

*U.S. ex rel. Shurtz v. Key*,
    3 MacArth. 328 (D.C. 1879)........................................................13

*U.S. ex rel. Yelverton v. Fed. Ins. Co.*,
    831 F.3d 585 (D.C. Cir. 2016) ......................................................... 17

*United States v. Concord Mgmt. & Consulting LLC*,
    2019 WL 7758635 (D.D.C. July 1, 2019) ......................................... 10

*United States v. Joyce*,
    498 F.2d 592 (7th Cir. 1974) ........................................................... 17

*United States v. Perry*,
    116 F.3d 952 (1st Cir. 1997) ........................................................... 10

## Other Authority:

D.C. Circuit Handbook of Practice and Internal Procedures (2025)....1, 9

## INTRODUCTION

Plaintiffs-Appellees seek rehearing en banc of a short *per curiam* opinion granting a writ of mandamus and vacating the district court's order. Rehearing, however, is "not favored," "rarely granted," and usually ordered only to secure or maintain uniformity of decisions among panels or decide questions of "exceptional importance." D.C. Circuit Handbook of Practice and Internal Procedures 58 (2025). Plaintiffs have offered no reason why this brief order satisfies that exacting standard. The order simply repeats the mandamus standard and finds it satisfied. And Judge Katsas's and Judge Rao's separate concurring opinions identifying distinct bases for granting the writ do nothing for Plaintiffs' petition. If anything, the split reasoning demonstrates that neither case-specific opinion can control future cases.

Plaintiffs argue that en banc rehearing is warranted for two equally flawed reasons. First, Plaintiffs claim that the ruling creates an intra-circuit split regarding the proper standard for mandamus relief. But the two sentences in the *per curiam* opinion, stating only that the mandamus standard is satisfied and the order below should be vacated, are insufficient to establish precedent capable of conflicting with this Court's

decisions. In any event, Judge Katsas and Judge Rao each properly applied the mandamus standard. At bottom, Plaintiffs' complaint is that the panel members misapplied a properly stated rule of law. That complaint is incorrect, but it is not worthy of en banc review regardless.

Second, Plaintiffs also suggest that en banc rehearing is warranted to address the "exceptional" question of a court's power to enforce its own orders. But again, the abbreviated *per curiam* opinion, with no legal analysis on that question, established no precedent regarding the power of a district court to enforce its own orders. It does nothing to displace the established power of courts to use sanctions, civil contempt, and even criminal contempt to enforce their orders in proper circumstances. Nor do the concurring opinions, even assuming that either or both carried any precedential force. Judge Katsas simply concluded that based on the written order and context here, the scope of the order was at least ambiguous and thus could not justify criminal contempt. Judge Rao rested on the principle that a district court cannot use contempt to enforce a *vacated* order and that the district court's specific "purge" remedy raised serious separation of powers issues. The analysis of both opinions is case-specific and unlikely to impact other proceedings.

There is no other basis for en banc relief.   Plaintiffs argue, in the alternative, that the en banc court should vacate and remand the case due to intervening factual developments.   Intervening facts are not a basis for en banc review, however, and the panel has already ordered that the case be remanded.   But insofar as Plaintiffs want to revive criminal contempt proceedings, Judge Katsas's agreement with the Government's interpretation of the temporary restraining order (TRO) establishes that the order cannot be clear enough to justify contempt, ending any possibility of further proceedings.   This Court should deny the petition for en banc rehearing.

## BACKGROUND

**District Court Proceedings.**   On March 15, 2025, Plaintiffs—five Venezuelan nationals who were at that time detained in Texas—sued in Washington, D.C. to block the Government from removing them as Tren de Aragua (TdA) members under an Alien Enemies Act (AEA) Proclamation.   *J.G.G. v. Trump*, 147 F.4th 1044 (D.C. Cir. Aug. 8, 2025) (*per curiam*) (Op.) ECF p. 2.   Plaintiffs sought a TRO barring their removal, Op. 3, which the district court granted, ordering the Government not to "remove any of the individual Plaintiffs from the

United States for 14 days absent further Order of the Court." 3/15/25 Second Minute Order. At a hearing held later that day on class certification, Government counsel affirmed compliance with the TRO, confirming that the five Plaintiffs were still in the United States and would not be removed for 14 days. No. 25-cv-00766 Dkt. 20 (Tr.) 4-5[1]; *see* 3/15/25 Third Minute Order.

During the hearing, the court addressed Plaintiffs' motion for nationwide class certification and request for a TRO barring removal of all individuals subject to the AEA Proclamation. Dkt. 3-4. After dismissing Petitioners' habeas claims because they did not seek release from detention, Tr. 22, the court provisionally certified the class and concluded that a nationwide TRO was appropriate for the Administrative Procedure Act (APA) claims. Tr. 23, 41-42.

In explaining the scope of that TRO during the hearing, the court specified that the court would soon "issue a minute order memorializing" the hearing discussion, so there was no need for counsel "to race to write it down." Tr. 42; *see also* Tr. 47. The court explained that the TRO "would

---

[1] Unless otherwise specified, references to the docket are to the district court's docket.

be to prevent the removal of the class for 14 days or until further order of the Court" and that the class was "all noncitizens in U.S. custody who are subject to the proclamation of March 15, 2025 and its implementation." Tr. 42. In discussing next steps, the court instructed Government counsel to inform the client of the TRO immediately and that the court expected that "any plane containing these folks that is going to take off or is in the air needs to be returned to the United States" and that "those people need to be returned to the United States[,] [h]owever that's accomplished, whether turning around a plane or not embarking anyone [in the class] on the plane[.]" Tr. 43; *see* Tr. 42-47.

Shortly thereafter, the court issued a minute order provisionally certifying the class and enjoining the Government "from removing members of such class (not otherwise subject to removal) pursuant to the Proclamation for 14 days or until further Order of the Court." 3/15/25 Fourth Minute Order. The minute order made no mention of planes or individuals who had already been removed from U.S. territory. *See id.*

**Appellate Proceedings - TRO.** The Government appealed both TRO orders and filed emergency motions for stays pending appeal. This Court issued a divided ruling denying stays. *J.G.G. v. Trump*, No. 25-

5

5067, 2025 WL 914682, at *1 (D.C. Cir. Mar. 26, 2025) (*per curiam*).  But the Supreme Court granted the Government's stay request and vacated the TROs, holding that the district court lacked authority to issue them because "[c]hallenges to removal under the AEA . . . must be brought in habeas" and jurisdiction over those habeas claims "lies in only one district: the district of confinement"—which, here, was in Texas.  *Trump v. J.G.G.,* 604 U.S. 670, 672 (Apr. 7, 2025) (*per curiam*).

**The Contempt Order.**  In the meantime, the district court issued an order to show cause regarding compliance with its TROs.  *See* 3/31/25 Minute Order.  At a hearing, the Government explained that it had fully complied by (i) not removing the named Plaintiffs, and (ii) not removing any other class member from U.S. territory after the second TRO issued.  *See* Dkt. 76 (Contempt Tr.) 5, 10, 13-18.

The Supreme Court's order vacating those TROs issued four days after the show-cause hearing.  604 U.S. at 672.  Yet, notwithstanding the Supreme Court's judgment, on April 16, the district court issued an order finding probable cause that Defendants had committed criminal contempt by failing to return individuals who had already been removed from the United States prior to issuance of the classwide TRO.  Dkt. 80-

6

81 (778 F. Supp. 3d 24). The court reasoned that its "written TRO and the oral command defining compliance"—which focused on removal of class members—"were each sufficiently clear and specific in proscribing the handover of class members to Salvadoran officials." *Id.* 47. The court characterized the Government's reading of the TRO as barring removal of individuals from U.S. territory (rather than removal from U.S. custody) as "clever" and consistent with "dictionary definitions," but nonetheless rejected it. *Id.* 43. The court reasoned that Defendants were instead "deliberately blind to the Court's unequivocal language and the context surrounding its Order"—namely, the hearing discussion that the court reassured counsel need not be written down because it would be memorialized in the written TRO. *Id.* 42; *see id.* 44-47, 53-54.

Having found probable cause, the district court determined the Government could "purge its contempt . . . by voluntarily obeying the court order"—despite it having since been vacated by the Supreme Court—by "asserting custody of the individuals" in El Salvador. *Id.* 54. The court further ordered that if the Government chose not to purge its contempt, the court would "proceed to identify the individual(s)

7

responsible for the contumacious conduct" and refer them for prosecution including, if necessary, by appointing a private prosecutor. *Id.*

**Appellate Proceedings - Contempt Order.** Two days after the district court issued its contempt order, the Government filed an emergency motion for a stay pending appeal or, in the alternative, a writ of mandamus. After granting an administrative stay, a panel of this Court issued a *per curiam* opinion on August 8.[2]

This Court granted mandamus and vacated the contempt order because the Government "satisfied the stringent requirements for a writ of mandamus." Op. 4. Judge Katsas and Judge Rao wrote concurring opinions, offering independent bases for granting the writ. Op. 5-39, 40-60. Judge Katsas explained that the Government's interpretation of the order was correct and thus it did not violate any order, much less a clear order as required for criminal contempt. Op. 17-28. Judge Rao reasoned

---

[2] Separately, the Government sought a stay of the district court's subsequent preliminary injunction requiring the Government to regain custody over class members. *See J.G.G. v. Trump*, No. 25-5217, 2025 WL 2317650, at *1 (D.C. Cir. Aug. 8, 2025). On July 18, 2025, while the appeals remained pending, the Government of El Salvador released the removed individuals for repatriation to Venezuela, and they returned to Venezuela on Venezuelan planes. *Id.* The panel vacated the district court's order and remanded the case given the intervening events. *Id.*

that a contempt order could not be used to enforce a vacated order and that forcing diplomatic outreach impermissibly intruded on Executive authority.  Op. 48-54.  Judge Pillard dissented.  Op. 61-110.

## ARGUMENT

En banc rehearing is disfavored and "rarely granted."  D.C. Circuit Handbook of Practice and Internal Procedures 58 (2025).  Plaintiffs are required to establish that the panel decision (A) "conflicts with a decision of the court" so that "the full court's consideration is therefore necessary to secure or maintain uniformity of the court's decisions;" (B) "conflicts with a decision of the United States Supreme Court;" (C) "conflicts with an authoritative decision of another United States court of appeals;" or, (D) "the proceeding involves one or more questions of exceptional importance."  Fed. R. App. P. 40(b)(2).  Orders that have an "inability to create an enduring intracircuit conflict or to bind future panels" are especially unfit for en banc review.  *Associated Press v. Budowich*, 2025 WL 2047025, at *2 (D.C. Cir. July 22, 2025) (Walker, J., concurring in denial of en banc rehearing); *Lewis v. Becerra*, 2025 WL 37164, at *1, *3 (D.C. Cir. Jan. 7, 2025) (Pillard, J., concurring in the denial of rehearing

9

en banc) (noting "reservations about the panel's opinion" but agreeing that the opinion "may have little precedential effect").[3]

## I. The order does not conflict with this Court's mandamus precedent.

The panel's mandamus order simply states that "Judge Katsas and Judge Rao conclude that the government has satisfied the stringent requirements for a writ of mandamus" and thus the Court "grants the government's petition for mandamus and vacates the district court's probable-cause order." Op. 4; *see* Pls.' Pet. for Reh'g En Banc (Pet.) 9 (acknowledging this). The only precedential piece of the order thus merely states that the mandamus standard is met, nothing more. No

---

[3] Civil contempt is designed to coerce the party to comply with the court's order such that compliance purges the contempt. *United States v. Perry*, 116 F.3d 952, 956 (1st Cir. 1997). Criminal contempt, on the other hand, is "punitive and imposed to vindicate the authority of the court," not to ensure compliance. *Id.*; *see also* Op. 44-45 (Rao, J., concurring). Since the district court issued a show cause order on criminal contempt to vindicate its own authority, Plaintiffs lack standing to affirmatively seek rehearing en banc. *See Ramos Colon v. U.S. Att'y for Dist. of Puerto Rico*, 576 F.2d 1, 5 (1st Cir. 1978) ("A party to the original litigation has no standing to prosecute an action for criminal contempt or to take an appeal from the court's rejection of his allegations."); *Jones v. Clinton*, 206 F.3d 811, 812 (8th Cir. 2000); *United States v. Concord Mgmt. & Consulting LLC*, 2019 WL 7758635, at *6 (D.D.C. July 1, 2019).

new standard or principle is created that could govern future cases. Rehearing is therefore unwarranted.

Indeed, there is no disagreement over the standard for mandamus. All three panelists and the parties agree that a writ of mandamus requires the requesting party to show a "clear and indisputable" right, that "no other adequate means" of relief exists, and that the writ is "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004); *see* Pet. 8; Op. 10-11 (Katsas, J., concurring); Op. 40-41 (Rao, J., concurring); Op. 61, 77-78 (Pillard, J., dissenting). So there is no disagreement as to the relevant legal standard or conflict with this Court's or Supreme Court precedent. Thus, this Court need not (and should not) grant en banc rehearing to address that legal standard.

Plaintiffs nonetheless contend that the order creates a lack of uniformity in this Court's precedent. Pet. 8. They insist that the panel improperly *applied* the legal standard because Defendants "did not come close" to meeting the criteria. Pet. 8. Realizing that the order itself does not alter the mandamus standard, Plaintiffs shift to implying that Judge Katsas's and Judge Rao's rationales in their separate opinions create a lack of uniformity. Pet. 8-10. But those rationales are non-binding and

11

thus necessarily create no conflict.  Indeed, the opinions do not even rest on the same rationale.  *See* Pet. 1-2 (calling decision "splintered").  Plaintiffs' disagreement with the concurring opinions thus cannot justify en banc rehearing.

Plaintiffs otherwise fail to establish that the order—or even the concurring opinions—create a lack of uniformity in this Circuit's precedents.  Plaintiffs argue that this Court has held that the sole way a party can establish a "clear and indisputable" right to a writ is by "identify[ing] a case" with a precedential opinion involving the same issues and circumstances—"direct" and "clear-cut precedent."  Pet. 8-9.  Since there is no case directly analogous to this one, Plaintiffs contend, the panel must have applied the incorrect standard.  *Id.*

But Plaintiffs overlook that the very opinions they rely on clarify that precedential case law is *not* the only method of establishing the right; instead, that right can be established in other ways, such as "statutory authority."  *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020) (citing *In re Khadr*, 823 F.3d 92, 99-100 (D.C. Cir. 2016)); *see* Pet. 9 (quoting *Al Baluchi* in arguing that precedent is mandatory).  Indeed, in early cases, where courts were grappling with questions about the writ

12

in the first instance, this Court necessarily had to review whether a right derived from legal authorities other than case law. *See, e.g.*, *U.S. ex rel. Shurtz v. Key*, 3 MacArth. 328, 335-37 (D.C. 1879); *Hull v. Commissioner of Patents*, 2 MacArth. 125, 132-33 (D.C. 1875).

In other words, this Court has consistently held that the right must be "clear and indisputable" based on the *law*, not based on whether this Court happened to have addressed the same issue in a precedential opinion. That is exactly what Judge Katsas and Rao did here; they reviewed various sources of law to determine that the mandamus standard was met on the particular facts at issue. *See* Op. 15-29 (Katsas, J., concurring) (considering precedential opinions, federal practice manual, and statutes); Op. 54-55 (Rao, J., concurring) (constitutional separation-of-powers principles). Plaintiffs' disagreement with how both Judge Katsas and Judge Rao separately applied the controlling legal standard to the facts of this case does not warrant en banc correction.

## II.  The question of whether a district court has the authority to enforce its orders is not presented or contested.

Plaintiffs next claim that en banc rehearing is warranted for this Court to review the "exceptional" question of "a federal court's power to enforce its orders." Pet. 10-15. But the actual order casts no doubt on a

court's ability to enforce its orders through criminal contempt or otherwise. Op. 4. In fact, the *per curiam* opinion did not address the district court's authority to enforce its orders at all. This case thus cannot create a conflict or raise an "exceptional" question on that subject.

In fact, none of the panelists or parties doubted a district court's ability to enforce its orders. Everyone agrees that district courts can use sanctions and civil contempt to enforce orders. *See Ramos Colon v. U.S. Att'y for Dist. of Puerto Rico*, 576 F.2d 1, 5 (1st Cir. 1978) (explaining ways courts can enforce orders). The only issue regarding criminal contempt was whether the district court properly wielded it here, given the unique facts and nature of this particular case.

Once again, Plaintiffs mischaracterize the dispute and focus on the concurring opinions. Pet. 11-15. Neither concurring opinion is binding, however, and the opinions do not even agree on the reasoning, underscoring why this order is unlikely to impact future cases, raise exceptional questions of law, or conflict with precedent. In any event, neither concurring opinion would warrant rehearing even if controlling.

Plaintiffs argue that Judge Katsas erred in finding the TRO's terms too ambiguous to support a criminal contempt finding. *Id.* Judge

Katsas's opinion, however, simply concludes that this specific TRO was ambiguous by parsing the precise wording of the order, hearing transcripts, and correspondence between attorneys and the district court. *See* Op. 17-28 (Katsas, J., concurring); *cf.* Op. 101-02 (Pillard, J., dissenting) (reading the TRO differently).  Judge Katsas's fact-bound analysis does not raise an exceptionally important question of law and thus cannot justify en banc rehearing even if it had precedential force.

Similarly, Judge Rao reasoned that, as the Supreme Court made clear, a district court cannot use a contempt order to enforce a *vacated* injunction.  Op. 48-49 (citing *Dep't of Homeland Sec. v. D.V.D.*, 145 S. Ct. 2627, 2629 (2025)).  Judge Rao also reasoned that the court's unique "purge" option interfered with the separation of powers in a manner specific to the situation in this case.  Op. 50-51.  As Judge Rao noted, the posture and facts of this this case are "highly unusual" with "no other like it."  Op. 54.  That makes it unsuitable for en banc rehearing.

In short, both concurring judges' rationales are highly fact-bound and unlikely to have any consequence beyond this case.  There is thus no reason for the en banc court to take up this matter.

## III.  There is no other basis for rehearing.

Plaintiffs argue, in the alternative, that this Court should remand the case for further factual analysis due to intervening events.  *See* Pet. 14-16.  But new facts are not one of the grounds for rehearing en banc. And the inaccurate allegations leveled by a disgruntled former employee do not change the legal analysis, much less meet the standard for en banc review.  If anything, the only relevant factual development undermines the district court's order: El Salvador's release of the class members for their transport by the Maduro regime to Venezuela renders the district court's "purge" option either moot or satisfied.  *See J.G.G.*, 2025 WL 2317650, at *1.  In any event, the panel already remanded the case, so Plaintiffs' petition for en banc review is both unnecessary and misplaced.

In addition, the order was correct as a matter of law for all of the reasons Judge Katsas and Judge Rao explained.  Importantly, Judge Katsas's case-specific reasoning establishes that any rehearing en banc, remand, or further proceedings below would be pointless.  As Judge Katsas made clear, the Government did not violate the district court's order.  Op. 17-28.  It is "settled law that contempt will not lie for violation of an order of the court unless the order is clear and decisive and contains

16

no doubt about what it requires to be done." *United States v. Joyce*, 498 F.2d 592, 596 (7th Cir. 1974); *see also U.S. ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 587 (D.C. Cir. 2016) (courts "resolve omissions or ambiguities in the order in favor of the enjoined party"). Reviewing the TRO, dictionaries, the relevant statutes, the hearing transcripts, and correspondence, Judge Katsas *agreed* with the Government's interpretation of the order. Op. 17-28. If a member of this Court agrees with the Government's interpretation of the order, then the order cannot possibly be sufficiently clear in the opposite direction to justify the extraordinary finding of criminal contempt.

In short, since Plaintiffs cannot show that the panel's limited *per curiam* opinion conflicts with any precedent, raises any exceptionally important legal questions, or that any new facts require vacatur or remand, the Court should deny Plaintiffs' en banc petition.

17

## CONCLUSION

The Court should deny the petition for en banc rehearing.

Respectfully submitted,

**BRETT A. SHUMATE**
Assistant Attorney General
Civil Division

*/s/ Drew C. Ensign*
**DREW C. ENSIGN**
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C.  20044-0878
(202) 514-2331
drew.c.ensign@usdoj.gov

**AUGUST E. FLENTJE**
Senior Counsel for Immigration

**TIBERIUS T. DAVIS**
Counsel to the Assistant Attorney General

**ANTHONY P. NICASTRO**
Acting Director
Office of Immigration Litigation

**ERNESTO H. MOLINA**
Deputy Director

September 15, 2025        *Counsel for Defendants-Appellants*

18

# CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,522 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in size 14-point Century Schoolbook font.

/s/ *Drew C. Ensign*
DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
United States Department of Justice

Dated:  September 15, 2025

# CERTIFICATE OF SERVICE

I certify that on September 15, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia by using the appellate CM/ECF system.

Proposed intervenor Paul Dorsey consented in writing to service by email at p.dorsey@comcast.net. I certify that on September 15, 2025, this document was served on him by email at that address.

I certify that all other parties' attorneys are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Drew C. Ensign*
DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation
Civil Division
United States Department of Justice